PLOUGH et al., Appellants,

v.

LAVELLE et al., Appellees.

[Cite as *Plough v. Lavelle*, 170 Ohio App.3d 720, 2006-Ohio-6200.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2005–P–0083.

Decided Nov. 24, 2006.

John J. Plough, pro se.

Christian R. Patno, for appellants Cyrus B. Plough, Edward Grodecki Jr., Robert Drugan, and Norman Mack Jr.

Richard Sopko, pro se.

Elaine Sopko, pro se.

Mary Beth Houser, for appellees.

Frank J. Cimino, Ravenna Law Director, for appellee city of Ravenna.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellants, John J. Plough et al., appeal the judgment of the Portage County Court of Common Pleas awarding summary judgment in favor of appellees, John Lavelle et al. For the reasons herein, we dismiss the matter for lack of jurisdiction.

{¶ 2} The instant matter emanates from the planned removal of certain trees located in St. Mary's Cemetery, in Ravenna, Ohio. After ascending to the office of bishop, appellee, Bishop Thomas J. Tobin, was granted legal title to St. Mary's Cemetery, as trustee, under the rules, regulations, canons, and discipline of the Roman Catholic Church for the use of the Catholic Diocese of Youngstown, its congregations, institutions, and agencies. Under canon law, the parish priest, appellee Father John–Michael Lavelle, was given full authority to administer all real property located within his parish, including the cemetery.

{¶ 3} Appellants, or their parents, had all purchased burial plots in the cemetery. In July 2004, Father Lavelle published in the church bulletin his intent to remove certain trees from the cemetery. The statement read:

{¶ 4} "Although very beautiful, these trees cause two very serious problems. First, when large limbs of [sic] even the entire tree themselves [sic] topple over in a storm, our insurance must cover the repair of the grave stones that are damaged. Second, the extending roots of the trees begin to push up the foundations, causing the grave stones to slant."[1]

{¶ 5} In late November or early December 2004, Father Lavelle contracted with a tree-removal company and work began on December 29, 2004. On the same day, appellant John Plough filed an action on behalf of himself and his brother to enjoin the cutting. The next day, Plough filed an amended complaint with several additional plaintiffs. Moreover, Attorney General Jim Petro was added as a defendant as required by Ohio's charitable-trust laws. The trial court issued a temporary restraining order preventing Father Lavelle, Bishop Tobin, the church, the cemetery, and the tree-removal company from any further removal of trees. On January 6, 2005, appellants filed their second amended complaint requesting a temporary restraining order, a preliminary injunction, and a permanent injunction.

---

1. The record contained additional evidence that the cemetery was in poor condition and that the tree removal was part of a larger refurbishment project that included tearing down an old chapel that several of the trees in question surrounded, widening the cemetery roads, and constructing a new maintenance building. Evidence indicated that once the construction was complete, a new landscaping plan would be adopted and new trees planted.

{¶ 6} The parties moved for summary judgment. Appellants argued that they are beneficiaries of the charitable trust created by the warranty deed conveying ownership of the property to Bishop Tobin as trustee. Father Lavelle, by the authority of Bishop Tobin, controlled the maintenance and upkeep of the cemetery. As a result, Father Lavelle inherited Bishop Tobin's fiduciary obligations in relation to such maintenance. However, in deciding to remove the trees, appellants alleged, Father Lavelle breached certain fiduciary duties he owed them as members of the congregation. Specifically, appellants alleged that they had purchased burial plots in the cemetery in reliance upon and in expectation of the trees remaining intact. As a result, appellants concluded, Father Lavelle's actions authorizing the trees to be cut down was arbitrary and a breach of his fiduciary duties.

{¶ 7} Appellees argued that appellants were not beneficiaries under the trust because they were not listed in the deed creating the trust. Thus, they are not entitled to any fiduciary duties under the trust. However, appellees submitted, even if appellants are beneficiaries, the matter is outside the jurisdiction of the trial court because a church tribunal had reviewed the matter and determined that Father Lavelle had acted within his proper authority in removing the trees.

{¶ 8} On September 19, 2005, the trial court granted appellees' motion for summary judgment as it pertained to the trees within the cemetery. The court determined that appellees did not breach any fiduciary duties in removing the trees from the cemetery.[2] This appeal followed.

{¶ 9} Appellants assign the following errors for our review:

{¶ 10} "[1.] The trial court erred as a matter of law when it partially granted defendants' motion for summary judgment on September 19, 2005.

{¶ 11} "[2.] The court erred by not granting plaintiffs' motion for extension of time to complete the deposition of defendant Lavelle and have the request for admission of Bishop Tobin before responding to the church defendants' motion for summary judgment and by not allowing Richard Pahls to be substituted as a party plaintiff."

{¶ 12} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

---

2. Appellants were awarded partial summary judgment regarding six trees that are located on the boundary to the cemetery. Appellees conceded that in order to remove these trees, they would comply with all relevant ordinances of the city of Ravenna.

{¶ 13} Summary judgment proceedings afford an appellate court the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212.

{¶ 14} Under their first assignment of error, appellants maintain that the trial court erred by failing to find that appellees, as trustees of a charitable trust, breached their fiduciary duties by cutting down the trees.

{¶ 15} Here, neither party disputes that the cemetery property was the subject res of a charitable trust explicitly set forth in a recorded warranty deed signed and witnessed on February 1, 1996. The deed conveyed the ownership of the subject property to Bishop Thomas J. Tobin, in trust "under the Rules, Regulations, Canons and Discipline of the Roman Catholic Church, primarily for the use and benefit of the several congregations, institutions, and agencies of the said Diocese of Youngstown * * *."

{¶ 16} We must initially address whether the lower court and, by implication, this court possess subject-matter jurisdiction over the instant matter. As a general rule, civil courts lack jurisdiction to adjudicate purely ecclesiastical or spiritual disputes of a church. *Presbyterian Church v. Hull Church* (1969), 393 U.S. 440, 445, 89 S.Ct. 601, 21 L.Ed.2d 658. This principle is a recognition that "[a]ll who unite themselves to such a body [i.e., the church] do so with an implied consent to [its] government, and are bound to submit to it. * * * It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for." *Watson v. Jones* (1871), 80 U.S.(13 Wall.) 679, 729, 20 L.Ed. 666.

{¶ 17} Moreover, civil courts acknowledge a difference between hierarchical and congregational churches. A church is hierarchical when "the religious congregation * * * is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." *State ex rel. Morrow v. Hill* (1977), 51 Ohio St.2d 74, 76, 5 O.O.3d 45, 364 N.E.2d 1156. Alternatively, a congregational church is "a religious * * * congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to a higher authority." Id., quoting *Watson,* 80 U.S.(13 Wall.) at 723, 20 L.Ed. 666.

{¶ 18} The record indicates that the Roman Catholic Church is a hierarchical polity with its own internal juridical structures. Hence, civil courts must

accept the decisions of the highest judicatories of a hierarchical religious organization on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. *Serbian E. Orthodox Diocese v. Milivojevich* (1976), 426 U.S. 696, 713, 96 S.Ct. 2372, 49 L.Ed.2d 151.

{¶ 19} Here, appellees attached a document to Father Lavelle's affidavit entitled "cemetery easement." The document indicates that the purchase of a burial plot in St. Mary's Cemetery is conditioned upon and subjects the grantee to "[a]ll rules and discipline of the Roman Catholic Church, and all rules and regulations of the aforesaid (Arch) Diocese now or hereafter existing in respect of the government of the aforesaid Cemetery as construed by the Grantor, shall be kept and observed." It appears that the easement was introduced to show that the instant dispute falls within the exclusive jurisdiction of the church's judicatories. However, the attached easement is blank and, thus, we believe that it has no specific bearing upon the instant litigation.[3]

{¶ 20} This conclusion notwithstanding, the warranty deed creating the trust provides that Bishop Tobin holds title to St. Mary's Cemetery, in trust, for the use and benefit of the congregation, "under the Rules, Regulations, Canons, and Discipline of the Roman Catholic Church * * *." Absent this quoted reservation, we believe that the instant matter would fall under the rubric of a nondoctrinal or nonecclesiastical issue. However, because the trustee's duties to the congregation are derivative of the "the Rules, Regulations, Canons, and Discipline of the Roman Catholic Church," we believe that the interpretation of these duties is a matter of "ecclesiastical rule, custom, or law."

{¶ 21} In his affidavit, Reverend Monsignor Michael Cariglio, Judicial Vicar for the Tribunal of the Roman Catholic Church, testified that the Roman Catholic Church is governed by the revised Code of Canon Law. His affidavit continued:

{¶ 22} "6. Pursuant to Canon 519, the pastor of the parish is the proper shepherd of the parish entrusted to him and the pastor must carry out his duties of teaching, sanctifying and governing his parish, with the assistance of lay members of the Christian faithful.

{¶ 23} "* * *

{¶ 24} "8. Well known to all, the Roman Catholic Church has a hierarchical structure. This means that the Church is one in which proper authority is exercised by bishops and priests in an ascending succession of judicatories. On its highest lever [sic], the supreme authority is His Holiness Pope Benedict XVI,

---

**3.** Had the appellees produced similar documents signed by appellants, it would demonstrate that a contract was entered into whereby any concerns pertaining to the cemetery would be addressed by the rules of the Roman Catholic Church.

Bishop of Rome and head of the Universal Church. The bishop of each diocese throughout the world functions totally in full communion with the Pope as head of the Church. Within the diocese, for example, the Diocese of Youngstown, the bishop of that diocese is in charge of its pastoral care with all administrative rights and obligations. Within each diocese, the pastor of a parish is assigned by his bishop for the pastoral care of that parish, with likewise the charge of all administrative rights and obligations.

{¶ 25} "9. Pursuant to Canon law, it is properly and clearly the authority of Reverend John–Michael Lavelle, as pastor of Immaculate Conception Church, to remove trees from St. Mary Cemetery * * *."

{¶ 26} Furthermore, attached to his affidavit is a copy of the Canonical Assessment authored by Monsignor Caliglio in his capacity as Judicial Vicar. In his decision, Monsignor Caliglio noted that he attempted to persuade the litigants to enter into a conciliation process, which failed owing to appellant Plough's failure to respond. After reviewing the relevant facts and interviewing the Assistant Director of the Diocesan Cemeteries regarding Father Lavelle's actions, Monsignor Caliglio determined:

{¶ 27} "[T]he complaints made by John Plough and others against the Pastor of Immaculate Conception Parish relative to the parish cemetery do not have any validity and are empty and vacuous."

{¶ 28} Also attached to Monsignor Caliglio's affidavit was a document entitled "Animadversion of the Promoter of Justice." The Animadversion is a review of Monsignor Caliglio's determination, by the Promoter of Justice, Reverend Monsignor John A. Zuraw. After reviewing the matter, Monsignor Zuraw determined:

{¶ 29} "[T]he rights of the parties have been protected and the procedures of the Code of Canon Law followed.

{¶ 30} "It is regrettable that Mr. John Plough has declined the invitation of conciliation offered by the Tribunal of the Diocese of Youngstown.

{¶ 31} "As Pastor of Immaculate Conception Parish, Father John–Michael Lavelle has demonstrated beyond any reasonable doubt the reasoning behind the razing of the trees in question.

{¶ 32} "Therefore, as Promoter of Justice, I state that the situation in question continues to be properly handled by Father John–Michael Lavelle, Pastor of Immaculate Conception Parish, Ravenna."

{¶ 33} Civil courts "are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of * * * ecclesiastical rule, custom, or law." *Milivojevich*, 426 U.S. at 713, 96 S.Ct. 2372, 49 L.Ed.2d 151. Because appellees' duties under the trust are conditioned by

"Rules, Regulations, Canons, and Discipline of the Roman Catholic Church," we believe that the instant matter necessarily involves the interpretation of ecclesiastical rule or law pertaining to the administration of a parish's real property. The lower court was consequently without power to infringe upon the church's disposition of the matter.

{¶ 34} We therefore hold that the trial court lacked jurisdiction to hear the dispute and was therefore bound to accept the decision of the Promoter of Justice. Given this conclusion, it is unnecessary for us to address appellant's second assignment of error.

{¶ 35} For the foregoing reasons, appellant's assigned errors lack merit and the instant appeal is dismissed.

Appeal dismissed.

FORD, P.J., concurs.

O'TOOLE, J., dissents.