OPINION
{¶ 1} Plaintiffs-Appellants Kansas St. James Parish of Ohio, Inc. ("Kansas St. James Parish"), and Jim and Virginia Hull ("the Hulls"), [1] as representatives of Kansas St. James Parish appeal from the May 15, 2008 Judgment Entry of the Final Judgment of the Court of Common Pleas, Seneca County, Ohio. The May 15, 2008 Judgment disposed of the claims concerning personal property, and made the March 31, 2008 Journal Entry of Judgment granting summary judgment in favor Defendant-Appellant the Catholic Diocese of Toledo in America ("the Diocese") a final appealable order.
 {¶ 2} The Parish of St. James, Kansas, Ohio was part of The Catholic Diocese of Toledo in America.[2] Leonard P. Blair ("Blair"), Bishop of the Diocese, made the decision, in 2005, to close 17 parishes within the Diocese. In early 2005, it was declared that the Parish of St. James, Kansas, Ohio was one of *Page 3 
the parishes to be closed. It appears that the closure, sometimes referred to as suppression, of the parish was effective July 1, 2005.
 {¶ 3} The parishioners appealed the closure of the parish to the Catholic Church's Congregation for Clergy, which affirmed Blair's decision.
 {¶ 4} After the parish closed, the former parishioners continued to use the parish church until approximately March 2006, when they found the church locked. It was the locking of the church, so that it could no longer be used by the former parishioners, that precipitated the present action.
 {¶ 5} The former parishioners subsequently formed the Kansas St. James Parish in May 2006. The Kansas St. James Parish is a not-for-profit corporation registered with the Ohio Secretary of State.
 {¶ 6} On June 21, 2006, Appellants filed a complaint for declaratory judgment and injunctive relief. In their complaint, Appellants sought a declaration that all real estate, church property, and funds of the suppressed parish were held in trust for the benefit of the former parishioners; claimed a breach of fiduciary duty; requested the appointment of a receiver; requested an injunction preventing the removal of any additional property from the church; requested an accounting; and requested that a constructive trust be declared along with the appointment of trustees. *Page 4 
 {¶ 7} On September 22, 2006 the Diocese filed a motion to dismiss the complaint. The Diocese argued that the trial court lacked subject matter jurisdiction to consider the complaint. On March 21, 2007 the trial court denied the Diocese's motion to dismiss. On April 11, 2007 the Diocese filed an answer to Appellants' complaint.
 {¶ 8} Appellants filed a motion for summary judgment on November 1, 2007. On November 2, 2007 the Diocese also filed a motion for summary judgment. On November 16, 2007 both the Diocese and the Appellants filed responses to the opposing parties' motions for summary judgment.
 {¶ 9} The trial court granted summary judgment in favor of the Diocese on March 31, 2008. Specifically, in its grant of summary judgment in favor of the diocese, the trial court addressed the Appellants' claim in terms of two separate questions: 1) whether the Appellants as the Kansas St. James Parish have any claim over the real property of the former parish, and 2) whether the Appellants as former parishioners of the catholic diocese have any claim to the real property of the former parish.[3]
 {¶ 10} With respect to whether the Kansas St. James Parish has any claim to the real property of the church, the trial court found as follows: *Page 5 
 [t]he first issue to address is Plaintiff Kansas St. James Parish of Ohio's claim to title in the real and personal property of the former Saint James Parish of Kansas, Ohio. This appears to [sic] based on the argument that Plaintiff Kansas St. James Parish of Ohio is an aggregation of former parishioners of the former parish. This claim does not hold up to scrutiny, however, because the members of the Plaintiff organization are not entirely the same as those of the former parish. Further, the Kansas St. James Parish of Ohio, an Ohio corporation, did not come into existence until almost a year after the parish was suppressed (closed). As a result, privity between the former parish and the present corporation is impossible. Further, Kansas St. James Parish of Ohio is not affiliated and never has been affiliated with the hierarchical religious organization. In conclusion, Plaintiff Kansas St. James Parish of Ohio does not have a claim to the property, real or personal, of the former Saint James Parish of Kansas, Ohio.
 {¶ 11} Second, with respect to whether the former parishioners of the catholic diocese have a claim to the church property, the trial court found as follows:
 [w]here a church is part of a hierarchical religious organization, such as the Roman Catholic Church, the ecclesiastical organization has the power to determine, among other things, membership and organization of the church. This includes the power to hold, reallocate, and determine ownership of the church property. Here, the Roman Catholic Church Canons hold that parish property is held by the parish and not the individual members. For example, the parishioners have no claim to parish property, but neither do they have an obligation to pay the debts of the parish. Plaintiff is correct in asserting that the court can use neutral principles of law. * * * [T]he ecclesiastical determination that parish property was held by the parish as an entity and that Bishop Blair has the authority to redistribute parish property must be upheld. This is the deference to hierarchical religious organizations that is required by the Religion Clause of the Constitution. *Page 6 
 Legal title to the parish's real property was held by Bishop Leonard Blair, as the trustee, for the benefit of the parish pursuant to the 2003 deed. This does not mean, however, that the individual members of the parish gain an interest, but that the entity of the parish has an interest. In an affidavit, Rev. Marvin Borger stated that parish property belonged to the parish as an entity ("juridic person") and not the individual parishioners, be they present or past. To hold otherwise would run in contravention of established Supreme Court precedent, such that hierarchical religious organizations would no longer be free to determine their manner of ecclesiastical organization. The property of the former Saint James Parish of Kansas, Ohio may be used and distributed as the hierarchical religious bodies of the Roman Catholic Church choose, without those decisions being reviewed by the court.
(internal citations omitted.)
 {¶ 12} Although the trial court found that there were still genuine issues of material fact with respect to the personal property left on the church premises, an agreement was reached regarding its disposition on April 20, 2008. The trial court filed a "Judgment Entry of Final Judgment" on May 15, 2008, finding that the agreement on the disposition of the personal property left no further genuine issues of material fact.
 {¶ 13} Appellants now appeal, asserting two assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES AND IN HOLDING THAT THE PLAINTIFF-APPELLANT KANSAS ST. JAMES PARISH OF OHIO, INC AND PLAINTIFFS-APPELLANTS JIM AND VIRGINIA HULL *Page 7 LACKED STANDING TO PURSUE THEIR BENEFICIAL INTERESTS IN THE TRUST PROPERTY OF THE FORMER KANSAS ST. JAMES CHURCH.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES AND IN RULING THAT PLAINTIFFS-APPELLANTS HAD NO BENEFICIAL INTEREST IN THE REAL AND PERSONAL PROPERTY OF THE FORMER KANSAS ST. JAMES CHURCH.
 {¶ 14} For ease of discussion, we elect to address Appellants' assignments of error together. In each of their assignments of error, Appellants argue that the trial court erred in granting summary judgment in favor of the Diocese. Specifically, Appellants argue that the trial court incorrectly determined that they lacked standing to pursue an interest in the real property of the church, and that they had no interest in the real property of the church.
 {¶ 15} An appellate court reviews a grant of summary judgment independently, and without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. Hasenfratz v. Warnement 3rd Dist. No. 1-06-03, 2006-Ohio-2797 citing Lorain Nat'l. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 572 N.E.2d 198.
 {¶ 16} A grant of summary judgment will be affirmed only when the requirements of Civ. R. 56(C) are met. This requires the moving party to establish: *Page 8 
(1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); seeHorton v. Harwich Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus. Additionally, Civ. R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 {¶ 17} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, 662 N.E.2d 264, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce *Page 9 
evidence on any issue which that party bears the burden of production at trial. See Civ. R. 56(E).
 {¶ 18} In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7,663 N.E.2d 653.
 {¶ 19} In the present case, the parish property was held in trust by Bishop Blair. The property was conveyed, in trust, to Bishop Blair in a Warranty Deed executed on December 4, 2003. In pertinent part, the language of the Warranty Deed establishing the trust provides as follows:
 Whereas, in his capacity as Bishop of the Roman Catholic Diocese of Toledo in America, James R. Hoffman did acquire and hold title to all of the real and personal property of the Roman Catholic Diocese of Toledo in America in trust pursuant to the civil law of the State of Ohio as announced in Mannix, Assignee vs. Purcell, et al., 46 Ohio St. 102 (1988) and pursuant to the Code of Canon Law of the Roman Catholic Church;
 * * *
 Whereas, in accordance with the civil law of the State of Ohio and the Code of Canon Law of the Roman Catholic Church, this deed is given to convey to and confirm in Leonard Paul Blair, in his capacity as Bishop of the Roman Catholic Diocese of Toledo in America, all right, title and interest in and to all real property of the Roman Catholic Diocese of Toledo in America. *Page 10 
Therefore, based on the language of the deed itself, which references both canon law and the civil law of Ohio, we look to Mannix v.Purcell (1888), 46 Ohio St. 102, 19 N.E. 572 to help clarify the terms of the trust.
 {¶ 20} In Mannix, the Ohio Supreme Court discussed a trust similar to the one in the case sub judice, although in the context of a factually distinguishable scenario. The parishioners who initiated the suit inMannix were asking the court to interpret the terms of the trust conveying church property to the Bishop of the church. Specifically, the parishioners in Mannix were asking the court to interpret the trust so as to protect church property from the Bishop's attempt to use church assets to satisfy personal debts.
 {¶ 21} In finding that the Bishop could not use church assets to satisfy his personal debts, the Mannix Court reached several separate conclusions which are instructive as to the specific nature and parameters of the trust referenced in the deed before us. First, the court found that under the trust the parishioners had an interest in church property, at least to the extent that they could take legal action to protect that property from being perverted to uses not intended in the trust, such as to pay personal debts of the bishop.
 Though the several congregations of the churches so held in trust, and the persons respectively possessing and having charge of such schools, cemeteries, and asylums, are severally unincorporated, and otherwise incapable of holding the legal title to the property so used, they nevertheless have such an interest in the trust property as permits them to be represented *Page 11 in court by a number less than the whole, having a common interest with them, for the purpose of protecting the property from seizure and sale for the satisfaction of the private debts of the trustee.
Mannix, 46 Ohio St. 102 at syllabus.
 {¶ 22} Once the court found that the parishioners had a protectable interest in church property, the court then defined that interest, holding that the congregants could not be definitively identified as individual beneficiaries of the trust. Instead the court defined the beneficiaries as the congregants at any given time. "Changes in the membership of such congregations and bodies do not affect their legal identity; and, for the purposes of continuing and enjoying the uses to which the properties respectively possessed by them are devoted, they respectively remain, in legal contemplation, the same congregations and bodies." Id.
 {¶ 23} Moreover, although the Mannix Court recognized the interest of the church members, it clearly distinguished the interest of the congregation, as a whole, from the interest of the individual parishioners, in terms of their pecuniary interest.
 No one seriously claims that the donors of the various charities now in question-those whose donations and contributions so largely comprised the funds to which they owe their existence-have a definable, pecuniary interest in, or claim upon, them which is enforceable in any court. Indeed, no such claim is made in their behalf. Nor is any personal or pecuniary interest asserted by or on behalf of those to whose uses they are being *Page 12 devoted. Their interest in them is limited to the enjoyment of these uses.
Mannix, 46 Ohio St. at 143-144 (emphasis added). And the court further defined the nature of the trust and the nature of the interests of the parishioners as beneficiaries of the trust, solely in terms of the rightto use of the property while they are legitimate parishioners of thecatholic church. Additionally, the court states that in addition to having no pecuniary interest in the church property, no individual parishioner can claim a private advantage under the terms of such a trust. "[N]othing can pass to them, nor can they, as individuals, act in any capacity in relation to the property." Mannix, 46 Ohio St. at 144.
 {¶ 24} In the present case, Appellants are asking that the bishop be divested of the legal title to the real property. In Mannix, the parishioners asked that the property remain with the Bishop upon the same trusts, and for the same uses to which the property had originally been devoted. The Mannix court held that the church property, held in trust, was to remain in trust, for the benefit of the parishioners.
 {¶ 25} The difference in these requested remedies is crucial to our resolution of the case. As the court in Mannix held "it is quite indispensable to the existence of the trust that the legal title be held by some one other than the cestuis que trustent, who are incapable, by reason of the indefiniteness which *Page 13 
characterizes their personality, of holding it." Id. Therefore, we note that Appellants are asking for a remedy outside the scope contemplated by Mannix.
 {¶ 26} In the present case, the parishioners are asking for the church property to be removed from the trust and either given over to them or placed in a trust outside the purview of the Catholic Church for their enjoyment. Although the Mannix Court recognized that the church property was held in trust for the benefit of the parishioners, it noted that the trust was never held for the benefit of the exact members of a parish congregation. Instead, property governed by the trust was held for the enjoyment and benefit of all congregants. Accordingly, the indefinable nature of the congregation members makes the former parishioners incapable of holding the trust. See Mannix, supra. Therefore we find that, based on the law as articulated in Mannix, the individual congregants, whether as former parishioners of the catholic diocese or as a successor and separate congregation no longer affiliated with the diocese, cannot make any claim to the church property now that the Diocese has decided to close the parish as it is not the individual parishioners at the time the parish was closed, but a more fluid concept of a congregation that is the actual beneficiary of the trust.
 {¶ 27} As for the closing of the parish by the catholic church, the former parishioners do not argue that the church real property is being misappropriated to some purpose contrary to the terms of the trust. Instead, Appellants argue that *Page 14 
they are dissatisfied with the Diocese's chosen use for the church property conveyed in the trust. The Eleventh District Court of Appeals addressed a similar case in Plough v. Lavelle, 170 Ohio App.3d 720,868 N.E.2d 1005, 2006-Ohio-6200. In Plough, plaintiffs sued to enjoin the Bishop from removing trees in a church owned cemetery. See, id.
Plaintiffs preferred the trees not be removed. Because they had purchased burial plots in the church-owned cemetery, the plaintiffs argued that they were, in effect, beneficiaries of the trust, and that the bishop had breached a fiduciary duty. Plough,170 Ohio App.3d at 723. The Plough Court recognized the constitutional limit of its own jurisdiction in dealing with ecclesiastical matters. In fact, the court found that generally "civil courts must accept the decisions of the highest judicatories of a hierarchical religious organization on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." Plough, 170 Ohio App.3d at 723 citing Serbian E.Orthodox Diocese v. Milivojevich (1976), 426 U.S. 696, 713,96 S.Ct. 2372, 49 L.Ed.2d 151.
 {¶ 28} Finally, turning to the new organization, the Kansas St. James Parish and any claims it may have to parish property. As the trial court correctly recognized, even if intervention were appropriate and we found that Mannix did not prohibit such intervention, there is no privity between the original parishioners and the new organization. First, the new organization was formed almost an *Page 15 
entire year after the Diocese closed the parish. Second, although there is some similarity of membership, Appellants do not contend that Kansas St. James Parish includes the entire congregation. Therefore, even if we disregard our prior findings, there is not sufficient privity between the former parishioners and the Kansas St. James Parish to allow the new organization to make claims on behalf of the former congregation. SeeKinstle v. Jennison, 3rd Dist. 1-07-04, 2007-Ohio-6556.
 {¶ 29} Therefore, because Mannix prohibits dispersion of the trust assets to the Appellants, either as former parishioners or as the new Kansas St. James Parish, and based on the holding in Plough, there can be no genuine issue of material fact or law with respect to the nature, parameters, or terms of the trust. Under Mannix, the trust rightfully remains with Bishop Blair and dictates that the property be held for the use of the catholic church and its parishioners. Accordingly, Appellants' first and second assignments of error are overruled.
 {¶ 30} Based on the foregoing, the Judgment of the Court of Common Pleas, Seneca County, Ohio is affirmed.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, J.J., concur. /jlr
[1] Collectively, the Hulls and the Kansas St. James Parish will be referred to as "the Appellants."
[2] It is important to recognize the distinction between the Kansas St. James Parish, the organization formed after the church was suppressed, bearing no relationship to the Diocese, and the Parish of St. James, Kansas, Ohio, which was a formally recognized parish of the catholic church.
[3] The trial court dealt with these questions concerning both the real property and personal property of the church. However, because the issue of the personal property was disposed of through agreement, we do not address the personal property. *Page 1