ESTEPH et al., Appellees,

v.

GRUMM, Appellant.

[Cite as *Esteph v. Grumm*, 175 Ohio App.3d 516, 2008-Ohio-1121.]

Court of Appeals of Ohio,
Fourth District, Hocking County.

No. 07CA6.

Decided March 13, 2008.

518

Blaugrund, Herbert & Martin, Inc., John W. Herbert, and Geoffrey P. Scott, for appellees.

Dagger, Johnston, Miller, Ogilvie & Hampson, L.L.P., and Ray R. Michalski, for appellant.

HARSHA, Judge.

{¶ 1} This case deals with easements to and purported encroachments upon a driveway shared by adjacent property owners and a pipeline company. William Grumm appeals the entry of a partial summary judgment in favor of William and Cheryl Esteph and Chesapeake Appalachia, L.L.C., who seek a declaration of the location of the easements. Because there is a genuine issue of material fact concerning whether the obstructions that Grumm placed in the shared driveway are within the "easement area" specified in the survey descriptions of the mutual easement, summary judgment in favor of the Estephs was improper. However, Chesapeake Appalachia met its burden to demonstrate the absence of a genuine issue of material fact regarding whether it possesses an easement over the driveway, and it showed that it was entitled to a judgment as a matter of law. Because Grumm failed to meet his reciprocal burden to set forth specific facts showing that there is a genuine issue for trial supported by evidence, summary judgment in Chesapeake Appalachia's favor was proper. Accordingly, we affirm in part and reverse in part.

## I. Facts

{¶ 2} Grumm owns a parcel of land adjacent to that of the Estephs, who operate a business, B.C. Excavating, from their property. Two easements purportedly burden Grumm's property. In 1951, one of Grumm's predecessors in interest, Noah and Elizabeth Young, conveyed an easement ("the 1951 easement") to the Ohio Fuel Gas Company to lay and maintain a gas pipeline over their property. This easement also granted the Ohio Fuel Gas Company rights of ingress to and egress from the pipeline. Chesapeake Appalachia, the Ohio Fuel Gas Company's successor in interest, acquired the pipeline and easement in 2005.

{¶ 3} The second easement runs in favor of the Estephs. After the Estephs purchased their property in 1996, they soon became embroiled in a boundary dispute with Grumm's immediate predecessors in interest, Koinia, a group that used the property for recreational purposes. A cabin and a driveway that Koinia constructed encroached upon the Estephs' property, and in 1999 Koinia brought an action in adverse possession asserting ownership of part of the Estephs' land. To settle the case, the Estephs agreed to deed a triangular 0.143 acre parcel of their land to Koinia; this eliminated the cabin's encroachment. However, as a result, part of the Estephs' driveway was now located on Koinia's property. Koinia and the Estephs agreed to grant each other reciprocal easements over their respective parts of the driveway. The granting clause of this "mutual easement" provided that "Esteph and Koinia each grants to the other a perpetual easement to use the properties described in 'Exhibits D–1 and D–2,' (the easement area) * * * for ingress and egress." The two exhibits give the survey descriptions of the "easement area" on each property. Further, the parties agreed "to replace, repair, and maintain the existing driveway, within the boundaries of the easement area in its current passable condition and at its current location and width." Unfortunately, the exact location, length, and width of the driveway were not provided.

{¶ 4} After Grumm acquired his tract of land in 2005, he concluded that the Estephs' and B.C. Excavating's use of the driveway exceeded the scope of the mutual easement. According to his affidavit, Grumm "located the survey pins for the access easement and marked the boundary lines of the access easement on the ground for [his own] reference" in order to prevent the Estephs and B.C. Excavating from trespassing on his land. He then placed a sign and various obstacles on his property in an area that he believed to be outside of the easement area. This effectively blocked approximately half of the width of the driveway. These obstructions also prevented Chesapeake Appalachia from using the driveway to access the pipeline that crosses both the Estephs' and Grumm's property. According to the affidavit of John Kimbleton, Chesapeake Appala-

chia's "landman," this gravel driveway is "the only point of access" to the gas line where it crosses the two properties. Kimbleton averred that Chesapeake Appalachia owned a right of ingress and egress over Grumm's property. Grumm, in his own affidavit, admitted that he had no personal knowledge regarding the location of Chesapeake Appalachia's easement.

{¶ 5} The Estephs brought this action alleging, among other claims, that Grumm had wrongfully interfered with the easement. Chesapeake Appalachia intervened, also alleging that Grumm had interfered with its pipeline easement. The trial court entered a partial summary judgment in favor of the Estephs and Chesapeake Appalachia. It found that the mutual easement granted to the Estephs the use of the entire gravel driveway as it existed in April 1999. It also found that the current driveway and the driveway as it existed in 1999 were not materially different. Because the survey description of the easement area did not represent the easement area as declared by the court, it severed that description from the recorded easement. The trial court also concluded that Chesapeake Appalachia possessed an easement to pass along the driveway by virtue of the 1951 conveyance from the Youngs to Chesapeake Appalachia's predecessor in interest. In light of the fact that other claims remained pending, the trial court found that there was no just cause for delay under Civ.R. 54(B). Grumm now brings this appeal.

## II. Assignment of Error

{¶ 6} Grumm presents one assignment of error:

The trial court erred in granting summary judgment to appellees, William Esteph, Cheryl Esteph and Chesapeake Appalachia, L.L.C. on their claims relating to easements affecting the real property owned by appellant, William Grumm.

## III. Standard of Review

{¶ 7} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard; thus, we review the judgment independently and without deference to the trial court's determination. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Summary judgment is appropriate only when (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law. Id. See also *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; Civ.R. 56(C). The party seeking summary judgment on the basis that the other side cannot prove its case must identify those portions of the record that demonstrate an absence of a genuine

issue of material fact on the essential elements of those claims. If the moving party satisfies this burden, the nonmoving party then has the reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. See *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264.

## IV. Standard of Review and Construction of Deeds

{¶ 8} This case requires us to construe a deed to determine the scope of an easement. Construction of a deed is a question of law for the courts. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. We therefore proceed with a de novo review of the instrument. *Hurst v. Baker* (Apr. 18, 1997), Gallia App. No. 96CA07, 1997 WL 215767.

{¶ 9} The intent of the parties to a deed controls its interpretation. *Ball v. Foreman* (1881), 37 Ohio St. 132; *Baker v. Jordan* (1854), 3 Ohio St. 438, 444–445; *Hurst.* When a deed is worded in clear and precise terms and its meaning is evident upon its face, there is no need to go beyond the four corners of the document. *Hinman v. Barnes* (1946), 146 Ohio St. 497, 508, 66 N.E.2d 911 ("if the intention of the parties is apparent from an examination of the deed 'from its four corners,' it will be given effect regardless of technical rules of construction").

{¶ 10} An easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate. *Alban v. R.K. Co.* (1968), 15 Ohio St.2d 229, 231, 44 O.O.2d 198, 239 N.E.2d 22; *Yeager v. Tuning* (1908), 79 Ohio St. 121, 124, 86 N.E. 657; *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, L.L.C.* (2000), 138 Ohio App.3d 57, 66, 740 N.E.2d 328. When an easement exists by an express grant, the extent and limitations upon the dominant estate's use of the land depend upon the language in the grant. *Alban* at 232, 44 O.O.2d 198, 239 N.E.2d 22; *Crane Hollow* at 66, 740 N.E.2d 328. When the language granting an easement is clear and the delineation of the easement is unambiguous, we presume that the deed expresses the intent of the parties, and we need not go beyond that language in determining the scope of the easement. See *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499 ("Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement"); *Carter v. Orrville,* 9th Dist. No. 06CA0013, 2006-

Ohio-6476, 2006 WL 3544675, at ¶ 19, quoting *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (holding that where the language granting an easement is clear, " '[i]ntentions not expressed in the writing are deemed to have no existence' ").

## V. The Estephs' Easement

{¶ 11} The trial court concluded that Koinia and the Estephs granted each other reciprocal easements that encompassed the entire driveway as it existed in April 1999. It found that the current existing driveway did not materially differ from the driveway as it existed at that time. Moreover, in severing the survey descriptions from the recorded instrument, the trial court found that the survey calls delineating the easement area did not coincide with the width and location of the existing driveway. In effect, the court reformed the easement because it believed that the intent of the parties was to include the entire driveway in the easement area, regardless of the survey description contained in the granting clause of the instrument.

{¶ 12} Grumm contends that the language of the mutual easement limits the easement to the surveyed property description in the exhibits. Because the driveway currently being used by the Estephs extends beyond the surveyed easement area, Grumm insists that the Estephs have no right to use that portion of it. In essence, he claims that the trial court erred in not giving the easement its plain meaning.

{¶ 13} The Estephs argue that the use, location, and width of the driveway have not changed since they created the reciprocal easement with Koinia. They contend that the mutual easement was to provide access to the entire driveway as it existed in 1999, which has not changed. They focus upon several references to "the existing driveway" in the agreement and do not address the survey description other than to claim that it was a mistake to the extent that it does not coincide with the existing use.

{¶ 14} Our analysis starts with the language of the mutual easement. The instrument contains a "whereas clause" that identifies the intent of the parties:

Whereas, an existing driveway passes over a portion of both the Esteph property and the Koinia property and Esteph and Koinia wish to grant to the other an easement for ingress and egress over such existing driveway *within the boundary lines of the easement are described in "Exhibits D–1 and D–2 * * *."* (Emphasis added.)

This language indicates that the easement was to cover the existing driveway only to the extent that it passed *within* the boundary lines described by the exhibit. Other provisions of the instrument support the conclusion that the easement applies only to the delineated area. The agreement provides that the

parties must "replace, repair, and maintain the existing driveway, within the boundaries of the easement area." It also requires repair of "any damage caused to the easement area and the existing driveway passing through the same." These references imply that the then-existing driveway occupied more than just the easement area and seem to differentiate between the easement and the driveway passing through it.

{¶ 15} More importantly, the only "granting language" found in the document specifically limits the reciprocal transfers to "easement area" described in "Exhibits D–1 and D–2." Because this language plainly and unambiguously limits the reciprocal easement to the surveyed areas in Exhibits D–1 and D–2, rather than to "the existing driveway," we conclude that the summary judgment improperly construed the easement.

{¶ 16} The ultimate question for summary-judgment purposes was what portion of the existing driveway lies within the survey areas contained in Exhibit D–1 and D–2. Under the current state of the record, the Estephs have not demonstrated that there is no genuine issue of material fact concerning the answer.

■■ {¶ 17} We also agree with Grumm that the issue of reformation was neither properly before the court nor adequately established under the current motion. Equity allows the reformation of a written instrument when, due to a mutual mistake on the part of the original parties to the instrument, the instrument does not evince the parties' actual intention. *Patton v. Ditmyer*, Athens App. Nos. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107, 2006 WL 3896780, at ¶ 27. However, the Estephs did not seek the reformation of the deed in their motion for a summary judgment, and there is no evidence in the record suggesting that the survey description resulted from a mutual mistake. Although Esteph states in his affidavit that "the prior owner's [sic] of the Grumm property granted me an easement across the gravel driveway to allow me to move my Company's excavation equipment between the rear of my property and the road," this statement does not specifically aver that the entire driveway was intended to be part of the easement area. Moreover, Esteph's affidavit does not prove that Koinia was mistaken when it signed the agreement. Therefore, the trial court improperly reformed the agreement. However, our reversal of summary judgment does not preclude the Estephs from seeking reformation of the mutual easement upon remand.

## VI. Chesapeake Appalachia's Easement

■ {¶ 18} The trial court declared that by virtue of the 1951 easement, Chesapeake Appalachia possessed a right of access over the shared driveway. Grumm argues that the 1951 easement could not grant an easement over the

shared driveway because, at the time that the Youngs granted the easement to the Ohio Fuel Gas Company, they did not own any of the land over which the driveway passed. Grumm now argues that the land over which the driveway passed was part of the parcel Esteph owned before Esteph transferred it in the previous litigation with Koinia. However, Chesapeake Appalachia's landman, Kimbleton, specifically averred that based upon his personal knowledge, his review of documents pertaining to the matter, and his discussions with field personnel, Chesapeake Appalachia owned an easement over the driveway that runs between the Esteph and Grumm properties. Specifically, he stated that "[b]oth [Chesapeake Appalachia's] predecessor in interest and [Chesapeake Appalachia] have used the gravel driveway * * * as its easement to access [the pipeline]." He also averred that Grumm had blocked Chesapeake Appalachia's ability to access the pipeline over this easement. Thus, Chesapeake Appalachia met its burden to demonstrate the absence of a genuine issue of material fact and the entitlement to a judgment as a matter of law. Accordingly, the burden shifted to Grumm to set forth specific facts showing that there is a genuine issue for trial and, because Chesapeake Appalachia supported its motion with an affidavit showing its entitlement to a summary judgment, Grumm could not rest upon the allegations within the pleadings. Civ. R. 56(E). Grumm has failed to meet his burden.

{¶ 19} In response to Chesapeake Appalachia's motion for a summary judgment, Grumm presented his own affidavit and the affidavit of Virginia Lee, a title examiner who performed a title search on the Estephs' and Grumm's properties. Grumm admitted in his affidavit that he was "currently not aware * * * when, how, and where the driveway claimed by Chesapeake was and is located." Thus, Grumm's affidavit does not rebut Kimbleton's affidavit, which states that Chesapeake Appalachia owns an easement over the driveway at issue in this case. Lee's affidavit explains that Grumm's predecessors in interest granted a pipeline easement to the Ohio Fuel Gas Company, Chesapeake Appalachia's predecessor in interest. However, Lee's affidavit does not state that the Estephs' property was not encumbered by a pipeline easement before the Estephs deeded a portion of their land to Grumm's predecessors in interest. Nor does Grumm put forward any evidence showing that Chesapeake Appalachia and its predecessors in interest have not been using the driveway at issue as their easement. Thus, Grumm has failed to rebut the evidence put forward by Chesapeake Appalachia in Kimbleton's affidavit. Accordingly, we hold that Grumm has not met his burden to demonstrate the existence of a genuine issue of material fact and to show that Chesapeake Appalachia is not otherwise entitled to a judgment as a matter of law. Therefore, the trial court properly entered a summary judgment in Chesapeake Appalachia's favor.

## VII. Conclusion

{¶ 20} Because the trial court erred in concluding that the Estephs possessed an easement over the entire driveway, we reverse the entry of a summary judgment in the Estephs' favor and the trial court's order severing Exhibits D–1 and D–2 from the mutual-easement agreement. Also, we hold that Chesapeake Appalachia has demonstrated the absence of a genuine issue of material fact concerning the location of Chesapeake Appalachia's easement, and it has shown the entitlement to a judgment as a matter of law. Because Grumm failed to meet his burden to set forth specific facts showing that there is a genuine issue for trial and supported by evidence, we affirm the trial court's order declaring that Chesapeake Appalachia possesses an easement over the shared driveway. We therefore remand this cause for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

McFARLAND, J., concurs.

KLINE, J., concurs in judgment only.