[Cite as *Dassel v. Hershberger*, 2010-Ohio-6595.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

RUTH DASSEL, et al.,                          :          Case No. 10CA6

                                              :

           Plaintiffs-Appellees,              :

                                              :          DECISION AND

     v.                                       :          JUDGMENT ENTRY

                                              :

JONATHAN H. HERSHBERGER, et al.,              :          **RELEASED 12/28/10**

                                              :

           Defendants-Appellants.             :

_____

APPEARANCES:

Jon M. Ickes, Fremont, Ohio, for appellants.

James C. Carpenter and Lyle B. Brown, STEPTOE & JOHNSON PLLC, Columbus, Ohio, for appellees.

_____

Harsha, J.

{¶1}   Sisters Ruth and Rosemary Dassel filed suit in the Jackson County Court of Common Pleas to recover a tract of undeveloped property they conveyed to Jonathan and Mary Hershberger by general warranty deed. The sisters alleged that they transferred the property to the Hershbergers in exchange for their promise to care for the sisters for the rest of their lives, and less than one month after the conveyance the Hershbergers breached the agreement. The Hershbergers defended the suit by claiming that the conveyance constituted an inter vivos gift. Following a bench trial, the court agreed with the sisters' position and ordered the Hershbergers to convey the property back to the Dassels, effectively rescinding the parties' contract.

{¶2}   On appeal the Hershbergers contend based on evidence they presented at trial, that the trial court erred when it found that the conveyance was an inter vivos

gift.  However, the deed clearly and unambiguously states that the sisters made the grant "for valuable consideration paid * * *."  Therefore, the Hershbergers could not use parol evidence to contradict the deed and show the property constituted a gift.

{¶3}    Next, the Hershbergers argue that the trial court erred when it considered parol evidence the Dassels offered to show that the Hershbergers promised to care for the sisters for the rest of their lives in exchange for the property.  However, the deed only stated that the Dassels executed it for "valuable consideration" without explaining the nature of that consideration.  Because the term "valuable consideration" is reasonably susceptible of more than one interpretation, the trial court properly considered parol evidence to clarify the ambiguity in the deed.

{¶4}    The Hershbergers also contend that the trial court could not order rescission absent fraud, duress, undue influence, or mistake, which the Dassels never alleged.  However, the trial court effectively found that the Hershbergers breached the contract when they stopped caring for Ruth.  And because the sisters did not have an adequate remedy at law to compensate them for this breach, the trial court could order the equitable remedy of rescission.

{¶5}    Finally, the Hershbergers claim that even if the trial court could order rescission, the court failed to restore the status quo because they did not receive compensation for home improvements they made, property taxes they paid, and the weeks of care they did provide Ruth.  However, the record shows that the sisters compensated the Hershbergers for the improvements and care of Ruth.  Moreover, we cannot say that the court abused its discretion when it failed to award the Hershbergers $366.30 for property taxes when they possessed approximately 119 acres of property

valued at $175,000 rent free for nearly two years.  Accordingly, we affirm the trial court's judgment.

## I. Facts

{¶6}    Ruth Dassel, then 81 years old, and Rosemary Dassel, then 78 years old, filed suit against the Hershbergers, seeking to recover title to a tract of land they had previously conveyed to the Hershbergers.  The Dassels alleged that in June 2008, Ruth was hospitalized and diagnosed with a "serious and possibl[y] terminal illness."  At the time of her discharge, she needed full-time assistance with daily care and personal hygiene.  The Dassels claimed that the Hershbergers agreed to provide this assistance to Ruth and to "do the same" for Rosemary for the rest of the sisters' lives.  In exchange, the Dassels agreed to convey the title to property in Jackson County to the Hershbergers.  The sisters claimed that less than one month after the conveyance, the Hershbergers suddenly abandoned Ruth and refused to return the property.  The Dassels sought an order directing the Hershbergers to convey the property back to them.  When the matter proceeded to a bench trial, several witnesses testified.

{¶7}    The Dassels introduced evidence that after their parents' deaths, they inherited certain property in Jackson County that included a "big house," a "little house," and undeveloped land.  In June 2008 Ruth fell ill and went into the hospital.  Prior to that time, the Hershbergers performed various odd jobs for compensation for the sisters.  Ruth testified that she knew the Hershbergers for four or five years at the time of her hospitalization and described her relationship with them as being "between a relative or a friend[,] it was a very comfortable relationship."

{¶8}    Rosemary testified that due to the severity of Ruth's medical problems,

she could not go home unless she had someone to care for her at all times.  According to Rosemary, the sisters had discussed living together before Ruth's hospitalization and over the course of several years Rosemary had been moving her possessions into the big house.  However, Rosemary testified that she lacked the physical ability to care for Ruth by herself, so she talked to the Hershbergers about taking care of Ruth and her for the rest of the sisters' lives.

{¶9}    Ruth came home on July 24, 2008, and five days later, the sisters signed a deed conveying approximately 119 acres of undeveloped property adjacent to the big house to the Hershbergers.  An appraiser valued the property at $175,000.  Both sisters testified that the property did not constitute a gift.  They testified that they previously held onto the property as security in case they needed money when they got older.  Rosemary testified that she only signed the deed because, based on her discussions with the Hershbergers, she believed they would take care of her and Ruth for the rest of their lives.  She thought the Hershbergers would stay in the little house and make sure Ruth had meals and clean laundry, take care of Ruth's needs in general, and care for her in the same way.  Ruth testified that the Hershbergers were supposed to "take care of us till we died."[1]  Both sisters testified that they took great comfort in knowing the Hershbergers would take care of them.

{¶10}  According to the sisters, the Hershbergers and their two children moved into the little house around the time Ruth came home from the hospital.  They made various improvements to the property, such as adding a bathroom and laundry room to the little house and putting up a fence for their horses.  Rosemary viewed the projects

---

[1] Although neither party raises the issue, some evidence at trial calls into question Ruth's capacity at the time she signed the deed.

as the Hershbergers' preparation for a long-term stay on the property. Both sisters testified that the Hershbergers received compensation for the materials and labor invested in these projects.

{¶11} The Hershbergers initially cared for Ruth when she returned from the hospital. Mary often stayed with her during the night and fixed her meals while Jonathan took care of the laundry and grocery shopping. However, less than one month later the Hershbergers moved out of the little house and stopped caring for Ruth, presumably because Mary could not handle the stress. According to the sisters, the Hershbergers received compensation for the care they gave Ruth.

{¶12} The Hershbergers testified that they promised the Dassels that they would try to take care of the sisters for the rest of their lives. However, they denied making this promise in exchange for the property. They claimed that the property constituted a gift for all they had done for the sisters over the years. Jonathan testified that he asked the sisters if his family could move into the little house so the couple did not have to travel far to care for Ruth. And with the Dassels' permission, Jonathan made various improvements to the house. He admitted that the sisters reimbursed him for these improvements. The couple testified that they left because Mary found the situation too stressful. Mary testified that she received compensation for the care she gave Ruth.

{¶13} The Dassels introduced into evidence a copy of the General Warranty Deed they signed. The deed indicates that the sisters granted the tract of undeveloped land to the Hershbergers "for valuable consideration paid[.]" In addition, the Dassels introduced a copy of a "Statement of Reason for Exemption from Real Property Conveyance Fee" form. This form indicates that no conveyance fee was charged

because this property was transferred "To or from a person when no money or other valuable and tangible consideration readily convertible into money is paid or to be paid for the real estate *and the transaction is not a gift*[.]"  (Emphasis added).  The Dassels presented evidence that Jonathan Hershberger hired the attorney, William Cole, who prepared the deed.  Cole's employee, Marla Henry, testified that she filled out the exemption form.

{¶14}  The trial court found that the Dassels conveyed the property to the Hershbergers in exchange for their promise to care for the sisters for the remainder of their lives.  The court also found that the Hershbergers stopped providing this care to Ruth.  After the court ordered the Hershbergers to convey the property back to the Dassels by general warranty deed, this appeal followed.

## II.  Assignments of Error

{¶15}  The Hershbergers assign the following errors for our review:

The Trial Court erred in finding that the actions of the Appellees were not a gift but were actions under a contract between the Appellees and the Appellants.

The Trial Court erred in not applying the Statute of Frauds to the facts in this case and thereby accepting Appellees' testimony that verbal agreements outside of the parties' written agreement were relevant and determinative of the parties' agreement.

The Trial Court erred in ordering the transfer of the real estate back to Appellees as an award of damages for breach of contract.

## III.  Was the Transfer an Inter Vivos Gift?

{¶16}  In their first assignment of error, the Hershbergers contend that the trial court erred when it found that the conveyance was not an inter vivos gift.  An inter vivos gift is "an immediate, voluntary, gratuitous and irrevocable transfer of property by a

competent donor to another." *Jones v. Jones*, Athens App. No. 07CA25, 2008-Ohio-2476, at ¶22, quoting *Smith v. Shafer* (1993), 89 Ohio App.3d 181, 183, 623 N.E.2d 1261. "The essential elements of an *inter vivos* gift are (1) intent of the donor to make an immediate gift, (2) delivery of the property to the donee, [and] (3) acceptance of the gift by the donee." *Grimes v. Grimes*, Washington App. No. 08CA35, 2009-Ohio-3126, at ¶20, quoting *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 161, fn. 2, 694 N.E.2d 989.

**{¶17}** The Dassels argue that they transferred the property for consideration, i.e. they executed a deed of purchase. To support this claim, they point to language in the deed that states they made the grant "for valuable consideration paid" and argue that parol evidence cannot be used to contradict this language, i.e. to show that the grant constituted an inter vivos gift. We agree.

**{¶18}** "The construction of written contracts and instruments, including deeds, is a matter of law." *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 1998-Ohio-186, 697 N.E.2d 208. We review questions of law de novo. Id. "The intent of the parties to a deed controls its interpretation." *Grimes*, supra, at ¶21, quoting *Esteph v. Grumm*, 175 Ohio App.3d 516, 2008-Ohio-1121, 887 N.E.2d 1248, at ¶9. "When construing a deed, a court must examine the language contained within the deed, the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." Id., quoting *McCoy v. AFTI Properties, Inc.*, Franklin App. No. 07AP-713, 2008-Ohio-2304, at ¶8.

**{¶19}** "When a deed is worded in clear and precise terms and its meaning is

evident upon its face, there is no need to go beyond the four corners of the document."

*Scarberry v. Lawless*, Lawrence App. No. 09CA18, 2010-Ohio-3395, at ¶23, quoting

*Esteph* at ¶9. "However, when a deed is ambiguous, unclear, or uncertain, a court may

consider extrinsic (or parol) evidence to ascertain the parties' intent." Id. The initial

determination of whether a written instrument is clear or ambiguous is a question of law

that we review de novo. Id. at ¶24. Terms of a written instrument are ambiguous if the

meaning of the terms cannot be deciphered from reading the entire instrument or if the

terms are reasonably susceptible of more than one interpretation. See *Lewis v. Mathes*,

161 Ohio App.3d 1, 2005-Ohio-1975, 829 N.E.2d 318, at ¶19; *Carter v. Dickerson* (Aug.

14, 1990), Lawrence App. No. 1904, 1990 WL 118878, at *2. And "when a deed

contains a recital of a valuable consideration received from the grantee, it is to be

construed as a deed of purchase, and parol evidence may not be used to show that it

was instead a deed of gift." *Grimes*, supra, at ¶22, quoting *McCoy*, supra, at ¶11.

**{¶20}** Here the deed clearly and unambiguously states that the grant was made

"for valuable consideration paid[.]" The Hershbergers could not use parol evidence to

contradict the deed and show that the property constituted a gift. Moreover, even if we

were to allow parol evidence in the form of Hershbergers' testimony, there is other parol

evidence, such as the exemption form, that supports the Dassels' position that the

property did not constitute a gift. To the extent that the Hershbergers claim the property

had to be a gift because the Dassels would not have paid them for Ruth's care and

given them property for providing that same care, we find that argument is not

dispositive. The trial court could have interpreted the sisters' testimony to mean that

they compensated the Hershbergers for their day-to-day work as usual and agreed to

convey the property to ensure the Hershbergers would not quit before their deaths. Therefore, the trial court correctly found that the deed constituted a deed of purchase, not a deed of gift, and we overrule the Hershbergers' first assignment of error.

### IV.  Could the Court Consider Parol Evidence of a Promise to Support?

{¶21}  In their second assignment of error, the Hershbergers contend that the trial court erred when it considered parol evidence the Dassels offered to show that they transferred the property in exchange for the Hershbergers' promise to care for the sisters for the rest of their lives.  But as we explained above, "when a deed is ambiguous, unclear, or uncertain, a court may consider extrinsic (or parol) evidence to ascertain the parties' intent."  *Scarberry*, supra, at ¶23.  And terms of a written instrument are ambiguous if the meaning of the terms cannot be deciphered from reading the entire instrument or if the terms are reasonably susceptible of more than one interpretation.  See *Lewis*, supra, at ¶19; *Carter*, supra, at *2.

{¶22}  Here, the deed contains a general statement that the Dassels made the grant for "valuable consideration," i.e. it is a deed of purchase.  But the deed fails to specify what that "valuable consideration" was, and the meaning of that term is reasonably susceptible of more than one interpretation.  See *Russell v. Daniels-Head & Assoc., Inc.* (June 30, 1987), Scioto App. No. 1600, 1987 WL 13943, at *9.  For instance, the consideration could be a certain amount of money or a promise to support the grantors.  Therefore, the trial court properly considered the Dassels' parol evidence about the support agreement to clarify the meaning of this ambiguous term. Accordingly, we overrule the Hershbergers' second assignment of error.

### V.  What is the Appropriate Remedy?

{¶23}  In their third assignment of error, the Hershbergers contend that the trial court erred when it ordered them to convey the property back to the Dassels, effectively rescinding the contract between the parties.  Implicit in the court's order is a finding that the Hershbergers breached their contract with the Dassels when the couple discontinued their support of Ruth Dassel.  The Hershbergers do not challenge this implicit finding, e.g. they do not claim that the Dassels failed to introduce sufficient evidence to show the couple breached the agreement.  Instead, they contend that the court could not select the remedy of rescission in the absence of fraud, duress, undue influence, or mistake, which the Dassels never alleged.  In other words, they contend that a failure of consideration does not warrant rescission in this case.

{¶24}  "Rescission is an equitable remedy for breach of contract."  *Bell v. Turner*, Highland App. Nos. 09CA20 & 09CA21, 2010-Ohio-4506, at ¶12, quoting *Camp St. Mary's Assn. of the W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, 889 N.E.2d 1066, at ¶25. "[R]escission is not merely a termination of the contract; it is an annulment of the contract.  The primary purpose of 'rescission' is to restore the parties to their original positions as if the contract had never been formed.  Returning the parties to status quo is an integral part of rescission * * *."  Id. at ¶13 quoting *Mid-America Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 599, 579 N.E.2d 721.

{¶25}  A failure of consideration does not inevitably warrant the rescission or cancellation of a deed.  *Village Of Seaman v. Altus Metals, Inc.* (March 24, 2000), Adams App. No. 99 CA 683, 2000 WL 331596, at *4; See 35 Ohio Jurisprudence 3d (2002) 273, Deeds, Section 51; 13A Ohio Jurisprudence 3d (2006) 103-104,

Cancellation & Reformation of Instruments, Section 21. However, "[w]ith conveyances in consideration of the support and maintenance of the grantor by the grantee, the grantee must, in addition to exercising the utmost good faith in the making of the contract, strictly perform the contract by exercising a benevolent regard for the welfare of those who are thereby committed to his or her charge." 13A Ohio Jurisprudence 3d (2006) 106, Cancellation & Reformation of Instruments, Section 23 (footnote omitted); See *Tracey v. Sacket* (1852), 1 Ohio St. 54, 58. "The neglect or failure of the grantee to live up to the obligations resting upon him or her under such a contract, especially when combined with other circumstances such as inadequacy of consideration, mental weakness, or unfair advantage in the execution of the contract may constitute a ground for the instrument's rescission." 13A Ohio Jurisprudence 3d (2006) 106, Cancellation & Reformation of Instruments, Section 23, citing *Widen v. Widen* (1929), 33 Ohio App. 37, 168 N.E. 477 and *Kuhn v. Jackman* (1929), 32 Ohio App. 164, 166 N.E. 247.

{¶26} Moreover, "[t]he cancellation or reconveyance of a deed given in consideration of support may also be granted on the ground of the hardship of the situation and inadequacy of the legal remedy of damages." Id. at 106-107, citing *Ford v. Ford* (1942), 71 Ohio App. 396, 43 N.E.2d 756; see *Taylor v. Brown* (1915), 92 Ohio St. 287, 299, 110 N.E. 739 ("Rescission may obtain in equity where there is no adequate remedy at law * * *."); see generally *Reid v. Burns* (1861), 13 Ohio St. 49; Curry & Durham, Ohio Real Property Law and Practice (6th Ed.2007), Section 4.07[5] ("Conveyances made in consideration of the grantee's promise to support the grantor are usually canceled in equity when the grantee fails to perform the promise."); 14 Powell on Real Property (1999) 81A-49, Section 81A.04[1][C]. We review a trial court's

decision on whether a plaintiff has an adequate remedy at law for an abuse of discretion. See *Baker v. Adams*, Logan App. No. 8-05-17, 2006-Ohio-3232, at ¶27. The phrase "abuse of discretion" implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *State v. Adams* (1980), 62 Ohio St .2d 151, 157, 404 N.E.2d 144.

**{¶27}** The trial court made no findings about why it concluded that rescission was the appropriate remedy in this case. "In the absence of findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment." *McCarty v. Hayner*, Jackson App. No. 08CA8, 2009-Ohio-4540, at ¶21, fn. 1. We agree with the Hershbergers that the sisters never alleged fraud, duress, undue influence, or mistake. However, under the circumstances in this case, the trial court could have found that the sisters lacked an adequate remedy at law for the Hershbergers' breach, necessitating rescission.

**{¶28}** The Dassels testified that the property they conveyed was their safety net for the future. They originally planned to sell it if they needed money but instead made the agreement with the Hershbergers for their care and support. Rosemary testified that the agreement with the Hershbergers meant "everything" to her – it gave her security to know that someone would look after her and Ruth, in their own house, and that they would have their own things around them. Ruth also testified about the peace of mind the agreement had given her. In particular, Ruth noted that she had always liked the Hershbergers and that Jonathan especially had "helped so long and been so good" to her. She paid the Hershbergers for the "special care" that she wanted. Ruth

also testified about the security she had knowing the Hershbergers would live right next door to her.

**{¶29}** Given the difficulty with placing a value on the care and support the Dassels intended to receive in their own home, for the rest of their lives (however long they may be), provided by people they built a relationship of trust with over several years, the court could have found that the sisters did not have an adequate remedy at law for the Hershbergers' breach. See generally *Cleveland Concession Co. v. City of Cleveland* (1948), 84 Ohio App. 1, 83 N.E.2d 818 (holding that equitable remedy was available where damages were uncertain and plaintiff did not have a full, adequate, and complete remedy at law). In raising their challenge to the rescission, the Hershbergers operate under the erroneous assumption that the sisters suffered no loss from the breach because at the time of trial, Ruth received hospice care she did not pay for, and Rosemary did not receive any care. The Hershbergers ignore the fact that they promised to care for the sisters for the rest of their lives and that the Dassels' care needs will necessarily change over time. Without the availability of an adequate remedy at law, the trial court could utilize the equitable remedy of rescission.

**{¶30}** The Hershbergers contend that even if the trial court could rescind the contract, the court failed to restore the status quo because they received no compensation for various expenditures, or the weeks of care they provided Ruth. When ordering rescission, "[t]he trial court has discretion in fashioning a decree that will return the parties to the position they occupied before they entered into the contract." *Bell*, supra, at ¶14, citing *Wells Fargo Bank Minnesota v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650, 931 N.E.2d 1121, at ¶23. Here, the trial court made no findings about

these alleged expenses or their impact on restoring the status quo. And again, "[i]n the absence of findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment." *McCarty*, supra, at ¶21, fn. 1.

{¶31} The Hershbergers contend that the court should have ordered the Dassels to pay them for improvements the couple made to the little house. Aside from the fact that the Hershbergers made no effort at trial to place a value on any of the work they did, the evidence shows that the Dassels already compensated them for this work. The sisters testified that they paid the Hershbergers for the labor and materials they put into the property, and on cross-examination Jonathan admitted that the sisters reimbursed him for the improvements to the little house. Therefore, we reject this argument.

{¶32} It is unclear from the Hershbergers' brief whether they also claim that the court should have awarded them damages for work done on the undeveloped property the sisters conveyed to them. The record contains some evidence that the Hershbergers cleared a portion of this land, but the Hershbergers presented no evidence of the value, if any, to this work. Therefore, we see no error here.

{¶33} The Hershbergers also contend that they should receive compensation for the weeks they cared for Ruth Dassel when she returned from the hospital. But again, evidence adduced at trial shows that the Dassels already compensated the Hershbergers for this care. The Dassels testified to this effect, and Mary admitted that the Dassels paid her. Moreover, in the Statement of Facts portion of their appellate brief, the Hershbergers acknowledge that they "were paid for this care." (Appellants' Br. 8). Therefore, we fail to see how the court abused its discretion by not awarding the

Hershbergers additional compensation.

{¶34}  Finally, the Hershbergers claim that the trial court should have ordered the Dassels to compensate them for property taxes the couple paid on the deeded property. Although Jonathan testified that he paid taxes on the property twice since the sisters conveyed it, he did not testify as to the amounts paid.  Although somewhat unclear, exhibits in the record indicate that the Hershbergers paid taxes once on the two parcels that comprise the property and that the taxes totaled $366.30.  But the Hershbergers held the property from July 29, 2008 (the date of conveyance) until March 24, 2010 (the date of the trial court's judgment entry).  In light of their nearly two year possession of a roughly 119-acre, $175,000 property, rent free, we cannot say that the court acted in an arbitrary, unreasonable, or unconscionable manner when it failed to award the Hershbergers $366.30 to restore the "status quo."  See generally *Areawide Home Buyers, Inc. v. Manser*, Mahoning App. No. 04 MA 154, 2005-Ohio-1340, at ¶44 (holding that seller was entitled to some amount of money for buyer's use of property prior to rescission of purchase agreement and land contract).  Accordingly, we overrule the Hershbergers' third assignment of error.

## VI.  Conclusion

{¶35}  Having overruled each of the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
William H. Harsha, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**