[Cite as *Hawkins v. Creech*, 2013-Ohio-1318.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| SHIRLEY A. HAWKINS, ET AL., | : | |
| | : | |
| Plaintiffs-Appellees, | : | Case No. 12CA938 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| FRANK RAY CREECH | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 03/19/13** |

_____
APPEARANCES:

Jon C. Hapner, Hapner & Hapner, Hillsboro, Ohio, for Appellant.

Dana N. Whalen, West Union, Ohio, for Appellees.
_____

McFarland, P.J.

{¶ 1} Defendant-Appellant Frank Ray Creech appeals the judgment of the Adams County Common Pleas Court granting a permanent injunction to Plaintiffs-Appellees Shirley Hawkins, Janet Shroyer, and Virginia Dyer. Having reviewed the record and the pertinent law, we affirm the judgment of the trial court.

FACTS

{¶ 2} Appellees and Appellant are four of nine children who, after the death of their mother Iva Creech in 2004, inherited an approximately 100- acre farm located in Adams County. Mrs. Creech's children had

several family meetings after her death, at which they discussed how the farm property would be divided.

{¶ 3} The family chose Appellee Shirley Hawkins and another sister, Kathy Black, to meet with a surveyor and discuss the property division. They took a list of issues discussed at the family meeting. Pursuant to the property division, one brother received the mother's house and barn area. The remaining eight family members received vacant land in equal tracts of 12.193 acres. Appellees and another sister who is not a party to these proceedings received interior lots. An easement was necessary to give the interior lot owners access to Creech Road, a public township road. The easement was 50- foot wide and gave access to Creech Road through Appellant's lot. The certificates of transfer for the interior lots contain the following language:

> Also hereby conveyed is the above-described 50.00 foot wide easement for ingress, egress, and utility placement from said Creech Road to the above described 12.193 acre tract.

{¶ 4} Sometime in 2009, Appellees began improving the easement by installing a culvert and dropping gravel, at a width of approximately ten feet, down the center of the easement. Various disputes arose regarding the rights of Appellees, as dominant easement holders, and Appellee, as a servient easement holder. A complaint for declaratory judgment and

injunction was filed on July 14, 2010.  By preliminary injunction granted October 12, 2010, Appellant was enjoined from placing anything upon the easement, but was permitted to plant crops.  Appellees were permitted to repair the culverts and maintain the easement as needed. In December 2011, the trial court granted a permanent injunction, further restricting Appellant's agricultural activities. In its decision, the trial court noted the easement became effective in 2006 and paraphrased Appellees' testimony that "the dominant estate holders are still learning what improvements to the roadway are necessary to effectuate reasonable use of the easement for ingress and egress, as well as utility placement."

{¶ 5}  Appellant filed a timely notice of appeal.

## ASSIGNMENT OF ERROR

I.      THE TRIAL COURT ERRED IN EXTENDING THE RIGHTS OF THE DOMINANT OWNERS OF THE EASEMENT OVER THE SERVIENT TENANT.

## A. STANDARD OF REVIEW

{¶ 6}  The decision to grant the equitable remedy of injunction rests in the sound discretion of the trial court.  See *Garano v. Ohio,* 37 Ohio St.3d 171, 524 N.E.2d  496 (1988); *Myers v. Wild Wilderness Raceway, L.L.C.,* 181 Ohio App.3d, 221, 2009-Ohio-9741, 908 N.E.2d 950,  Fn 5 (4th Dist.). Trial courts retain broad discretion to fashion the terms of an injunction.

*D&J Co. v. Stuart,* 146 Ohio App.3d 67, 80, 765 N.E.2d 368 (6th Dist.

2001); *Restivo v. Fifth Third Bank of Northwestern Ohio, N.A.,* 113 Ohio

App.3d 516, 520, 681 N.E.2d 484 (6th Dist. 1996); *Cullen v. Milligan,* 79

Ohio App.3d 138, 141, 606 N.E.2d 1061 (10th Dist. 1992); *Myers,* ¶ 25.

{¶ 7}  Generally, an abuse of discretion is much more than an error of

law or judgment; rather, it implies that a trial court's attitude is

unreasonable, arbitrary, or unconscionable.  See *Landis v. Grange Mut. Ins.*

*Co.*, 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998); *Malone v. Courtyard*

*by Marriott L.P.,* 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1996); *Myers,*

at 26.  When applying the abuse of discretion standard, appellate courts must

not substitute their judgment for that of the trial court.  *State ex rel. Duncan*

*v. Chippewa Twp. Trustees,* 73 Ohio St.3d 728, 732, 654 N.E.2d 1254

(1995); *In re Jane Doe 1,* 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181

(1991); *Myers,* 26. Indeed to establish an abuse of discretion, the result must

be so palpably and grossly violative of fact or logic that it evidences not the

exercise of will but the perversity of will, not the exercise of judgment, but

the defiance of judgment, not the exercise of reason but instead passion or

bias.  See *Nakoff v. Fairview Gen.Hosp,* 75 Ohio St.3d 254, 256, 662 N.E.2d

1 (1996); *Adams v. Adams,* 4th Dist. No. 05CA63, 2006-Ohio-2897, 2006

WL 1570297, at ¶ 6; *Myers* at 26.

{¶ 8} An easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement, in the dominant estate, to a limited use of the land in which the interest exists, the servient estate. *Alban v. R.K. Co.,* 15 Ohio St.2d 229, 231, 239 N.E.2d 22 (1968); *Yeager v. Tuning,* 79 Ohio St. 121, 124, 86 N.E.657 (1908); *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, L.L.C.,* 138 Ohio App.3d 57, 66, 740 N.E.2d 328 (4th Dist. 2000); *Esteph v. Grumm,* 175 Ohio App.3d 516, 2008-Ohio-1121, 887 N.E.2d 1248, ¶ 10 (4th Dist.). When an easement exists by an express grant, the extent and limitations upon the dominant estate's use of the land depend upon the language in the grant. *Alban* at 232, 239 N.E.2d 22; *Crane Hollow* at 66, 740 N.E.2d 328; *Grumm* at 10.

{¶ 9} "It has long been the rule in Ohio that although the owner of the dominate estate may not increase the burden or materially enlarge his right over the serviant estate, changes in the use of the easement are permitted to the extent they result from normal growth and development of the dominate land, and are a proper and reasonable use of the easement, *Erie Railroad Company v. S.H. Kleinman Realty Company,* 92 Ohio St. 96, 110 N.E. 527 (1915). An easement holder may not increase the burden upon the serviant estate by engaging in a new and additional use of the easement,

*Centel Cable Television Company of Ohio, Inc. v. Cook,* 58 Ohio St.3d 8, 567 N.E.2d 1010 (1991). However, in the absence of specific language to the contrary, the easement holder may vary the mode of enjoyment and use of the easement if by doing so he can more freely exercise the purpose for which the grant was made, *Ohio Oil Gathering Corp. II v. Shrimplin,* (July 23, 1990), Coshocton App. No. 89-90, citations deleted." *Myers v. McCoy,* 4th Dist. No. 2004CAE07059, 2005 Ohio-2171, 2005 WL 1038871, ¶ 21. Generally, the court should presume the parties contemplated normal development would result in some changes in the mode of use of the easement, even if the parties had not anticipated the specific change which occurs. *Myers,* at ¶ 21.

## B. LEGAL ANALYSIS

{¶ 10} The parties do not dispute the trial court's finding the easement was an express grant and the dimensions and use are unambiguous. In its decision, the trial court quoted the above-referenced language from *Myers v. McCoy* and concluded there was no abuse of the use of the easement and the use had simply expanded from the natural development and use of the property. The permanent injunction fashioned by the trial court, contained certain restrictions summarized as follows:

1) No fences permitted to be constructed on the easement, with the exception of an "H" brace currently situated;

2) No cattle permitted on the easement;

3) No gates permitted placed on the easement, unless by agreement of parties; and,

4) No cultivation of crops and plowing permitted.

{¶ 11}  Appellant disputes the portion of the decision forbidding Appellant to plow, cultivate, fence, or gate the easement outside of the roadway area. Appellant argues the trial court has abused its discretion when it fails or refuses to properly apply the law, further arguing that the *Myers* case does not reflect the law in Ohio.   Based upon our review of the record, we agree with the trial court's decision.

{¶ 12}  The Fifth Appellate District in *Myers* relied on the language in *Erie Railroad Co. v. S.H. Kleinman Realty Co.,* 92 Ohio St. 96, 110 N.E. 527, (1915) which held at the second paragraph of the syllabus: "[s]uch easement is not limited in its use to the original use of the lands, but expands and fluctuates to meet the growth, development and changed condition of such lands."

{¶ 13}  In *Erie*, the plaintiff's southerly parcel of land was separated from an access highway by defendant's railroad and the northerly parcel of plaintiff's land which abutted the access highway.  The plaintiff planned to develop the south parcel of land and the railroad objected to the proposed

increased use of a 15 foot easement crossing the railroad tracks. The Supreme Court of Ohio explained the rationale of its holding in the second paragraph of the syllabus, stating: "[t]he policy of the law as to easements should be one that encourages the growth and development of lands." *Erie,* pp. 99-100.

{¶ 14} The *Erie* case has not been overruled and is a correct statement of the law in Ohio. We have previously found the holding in *Erie* to be applicable in *Prince v. Edgington*, 4th Dist. No. 949, 1983 WL 3254, (Aug. 11, 1983), at * 3 and *4, (wherein the appellate court affirmed the trial court's judgment that the use of an easement by necessity could be increased to meet appellees proposed use for the real estate). See also *Heiner v. Kelley,* 4th Dist. No. 98CA7, 1999 WL 595363, (July 23, 1999), at *11 and *12, (citing *Erie* in its decision that appellees/cross-appellants did not extinguish their easement through overburdening or misuse.) Upon review of the facts contained in the record herein, we also find *Myers* to be persuasive authority.

{¶ 15} In this matter, the trial court heard three days of testimony for and against granting the permanent injunction. The trial court reviewed photograph exhibits of the easement and surrounding land. To paraphrase, Appellant contended his understanding of the easement was that his sisters

had a 50-foot right- of- way and he could use whatever portion they were not using. He specifically testified "you got an easement, you pick your spot you want to travel on." Appellant emphasized that Appellees picked the location and width of the easement and he had no imput on the matter. He acknowledged he was present at the family meetings, but also testified the easement's location was not discussed with the family as it should have been.

{¶ 16} By contrast, the trial court heard the testimony of Appellees' various witnesses that Appellant was present at the family meetings. Kathy Black testified although he did not go with her to meet the surveyor, he was present when it was voted that Appellee Shirley Hawkins and she would go. The trial court admitted an exhibit containing typewritten notes of the family meeting regarding "talking points" to be discussed with the surveyor. From the record, it appears likely that Appellant had some imput on the matter.

{¶ 17} Appellees testified the roadway was placed by dropping gravel approximately ten feet down the center of the easement. Virginia Dyer specifically testified they were not sure where the utility companies were going to place the utilities, so the roadway was placed in the center in order to accommodate both sides of the easement. The plain language of the easement indicates Appellees are entitled to use the entire strip of land.

When an easement is created by an express grant, the extent and limitations of the use of the easement depend upon the language of the grant. *Alban,* at 232; *Skaggs v. Miller*, 4th Dist. No. 95CA2381, 1996 WL 263374, (May 17, 1996), at *3. Here, the plain language of the easement, contained in the certificates of transfer for the interior lots, states: "Also hereby conveyed is the above-described 50.00 foot wide easement for ingress, egress, and utility placement from said Creech Road to the above described 12.193 acre tract." Although Appellees chose to create a ten-foot wide gravel roadway, they ostensibly could have chosen to make the roadway much larger, or even the entire 50.00 feet. The language used in the grant evidenced a clear intention to grant a 50.00 foot easement to Appellees for ingress, egress, and placement of utilities. They have not attempted to use the entire 50.00 feet for other activities. There was no language in the easement to suggest that the easement area outside of the roadway portion was to be treated any differently than the remainder of the easement. See *Shikner v. Stewart,* 6th Dist. No. OT-09-015, 2010-Ohio-1478, 2010 WL 1256047, ¶ 34. There is no evidence in the record that Appellees have intended to surrender or abandon the portion of the easement outside of the roadway for placement of utilities to Appellant for planting crops or grazing cattle. See *Snyder v. Monroe Township Trustees,* 110 Ohio App.3d 443, 674 N.E.2d 741 (2nd. Dist.1996),

* 457 and *458( non-use of easement did not evince intent to abandon easement);  *Lake White Comm. Assoc. Inc. v. Lucas*, 4th Dist. No. 432, 1990 WL 253039, (Dec. 13, 1990),  *4, (Appellants were under no duty to make use of the easement in order to retain their right to title.)

{¶ 18}  Appellant urges that the easement restrictions interfere with his agricultural use of the land.    Appellant also denied obstructing the easement.  He argued he could use the land outside the roadway in any way not inconsistent with the easement.   Appellant argues that *Gibbons v. Ebding,* 70 Ohio St. 298, 71 N.E. 720 (1904), governs:

> "Thus, the owner of the servient estate may use the land for any purpose that does not interfere with the easement.  Absent language in the deed or in the circumstances surrounding its creation or use, the servient estate owner may put gates or bars across it unless they would unreasonably interfere with its use." *Gibbons,* paragraph two of the syllabus; *Mays v. Moran*, 4th Dist. Nos. 97CA2385, 97CA2386, 1999 WL 181400, (March 18, 1999).

{¶ 19}  Although *Gibbons* remains good law, the trial court herein found that Appellant's actions of cultivating and plowing unreasonably interfered with Appellees' use of the easement. Appellant denied plowing on to the gravel or obstructing the driveway, yet he admitted plowing and

disking the easement and having a garden area in the easement. He acknowledged the photographs showed clods of dirt on the gravel roadway. Janet and Charlie Shroyer testified they came to the property approximately twice a month to visit their cabin. Janet Shroyer testified Appellant's plowing and planting made it more difficult to get through the easement. Shirley Hawkins testified Appellant had changed the contour of the land and it had lost its natural drainage. Pictorial evidence also showed water lying on the roadway. The trial court heard evidence from the various appellees' witnesses that the current condition of the driveway made it difficult to pass; that Appellant had already put up fence posts for a gate; and that the fence posts restricted the easement. Two Appellees testified gates would be an unreasonable burden on them. Although Appellant emphasizes historical agricultural use of the easement area, Kathy Black, who testified she visits almost every weekend, also testified that tobacco had not been planted in the easement area for over ten years. She further testified that hay that had grown in the area had come up on its own.

{¶ 20} These credibility issues are for the trier of fact to resolve. *Cole v. Complete Auto Transit, Inc.,* 119 Ohio App.3d 771, 777-778, 696 N.E.2d 289 (1st Dist. 1997); *Jacobs v. Jacobs,* 4th Dist. No. 02CA2846, 2003-Ohio-3466, 2003 WL 21500026, at ¶ 31; *Myers,* ¶ 16. The rationale for

deferring to the trier of fact on issues of witness credibility and evidence weight is that the trier of fact is best situated to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weight credibility.  *Myers v. Garson,* 66 Ohio St. 3d 610, 615, 614 N.E. 2d 742 (1993); *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Myers,* 16.  The trier of fact may choose to believe all, part, or none of the testimony of any witness who appears before it.  *Rogers v. Hill,* 124 Ohio App.3d 468, 470, 706 N.E.2d 438 (4th Dist. 1998); *Stewart v. B.F. Goodrich Co.,* 89 Ohio App.3d 35, 42, 623 N.E.2d 591 (4th Dist. 1993). *Myers v. Wild Wilderness Raceway, L.L.C.,* 908 N.E.2d 950, at ¶ 16.   Based on the evidence and testimony presented by Appellees, we do not find the trial court abused its discretion by finding Appellant unreasonably interfered with the use of the easement and ordering Appellant to refrain from plowing and cultivating the easement, placing fences and gates on it, and grazing cattle there. The trial court pointed out Appellant's acknowledgement in his testimony that his plowing had hindered the use of ingress and egress if users were required to depart the gravel roadway in order to pass.  The trial court found Appellant had created

a plowed furrow up against the edge of the gravel roadway and in doing so, had created an unreasonable restriction.[1]

{¶ 21} Appellant also argued Appellees have never attempted to place utilities on the property. The Shroyers testified they plan to retire to the property and will need to have the utilities installed. Because of the actions of Appellant, they have had to spend more money on the roadway and culvert. Mrs. Shroyer testified she had gotten an estimate from the electric company a couple of years ago. The inference can be drawn that Appellees may have begun installation of utilities had they not had increased associated expenses with the roadway and ensuing litigation. Again, the trial court was in the best position to view the witnesses and assess the credibility of their testimony with regard to the utility issue. The trial court noted the easement was essentially five years old, and "five years is early in the development of what the actual use needs to be and what it will be. Changes are anticipated and they are contemplated."

{¶ 22} For the foregoing reasons, we overrule Appellant's assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

---

[1] The trial court also noted in granting the permanent injunction that the previous court order granting the preliminary injunction had been so liberally construed that crops had been planted to the very edge of the roadway. By way of explaining its difficult decision, the trial court noted that its ruling must be unambiguous with regard to cattle, gates, and fence in order to avoid future litigation.

Abele, J., Concurring in Part & Dissenting in Part:

{¶ 23}  This case involves an easement for ingress, egress and utilities created by an express grant (fifty foot metes and bounds description).  It is important to note that no other limiting language appears in the grant.  The owner of the servient estate retains the right to use his land in a manner consistent with the purpose and use of the easement.  *Rueckel v. Texas Eastern*, 3 Ohio App.3d 153, 444 N.E.2d 77; *Ayersville Water and Sewer Dist. v. Geiger*, 2012-Ohio-2689.  Accordingly, the servient estate's owner has no right, and may not in any manner, interfere with the reasonable and proper use of the easement.

{¶ 24}  After my review of the record, I fully agree with the trial court and the principal opinion that in the case sub judice appellant unquestionably interfered with the appellees' use and enjoyment of the easement.  Appellant's actions of, inter alia, plowing along the edge of the lane, erecting gates and fences, planting crops on the edge of the lane and chasing away dominant estate holders who attempted to mow and maintain the easement obviously interfered with the use and enjoyment of the easement.  This type of activity must cease.  My question, however, is whether a court may issue a blanket prohibition against all activities that involve the use of the land, within the fifty foot boundary, even when those activities do not interfere

with the use and enjoyment of the easement. The owners of the dominant estate obviously have an interest in this land, but they do not own the land in fee simple. Rather, they hold an easement or right to use this land for a specific purpose.

{¶ 25} Once again, I note that the grant is silent with respect to any prohibited activities, including fences, landscaping, crops, trees or even structures. Accordingly, appellant should be permitted to use portions of the easement in any manner he chooses as long as that use does not interfere with the use and enjoyment of the easement. For example, erecting a fence parallel to the lane that does not interfere with the use and enjoyment of the easement should not be prohibited. In fact, owners of servient estates for road and utility easements generally may engage in landscaping activities, crop planting, gardening, fencing and even erecting certain structures as long as their activities do not, in any manner, interfere with the use and enjoyment of the easement.

{¶ 26} In this case I do have great sympathy for the parties and for the trial court. The parties are siblings apparently at war over their rights and obligation in land given to them by their mother. The trial court was placed, as it often occurs, in the unenviable position of crafting a remedy to resolve this dispute and, hopefully, deter future problems. These are

laudable goals, indeed.  However, although I fully agree with the trial court and the principal opinion that appellant unquestionably interfered with the use and enjoyment of the easement, and that he must be prohibited from doing so in the future, I believe that any restrictions on appellant's use of his land must be narrowly tailored to permit him to use his land in any manner that is not inconsistent with the use and enjoyment of the easement.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J.:    Concurs in Judgment and Opinion.
Abele, J.:    Concurs in Part and Dissents in Part with Opinion.


                                        For the Court,

                        BY:    _____
                                        Matthew W. McFarland
                                        Presiding Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**