[Cite as *Mullins v. Wicker*, 2017-Ohio-5663.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| BROTHER ALGER MULLINS, et al., | : | |
| | : | Case No. 16CA872 |
| Plaintiffs-Appellees, | : | |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| JIM WICKER, et al., | : | ENTRY |
| | : | |
| Defendants-Appellants. | : | **Released: 06/22/17** |

APPEARANCES:

Thomas M. Spetnagel, Law Offices of Thomas M. Spetnagel, Chillicothe, Ohio, for Appellants.

William S. Cole, Cole, Kirby, & Associates, LLC, Jackson, Ohio, for Appellees.

McFarland, J.

{¶1} This is an appeal of the July 5, 2016 judgment entry of the Pike County Court of Common Pleas. Appellants, various members of the Little Ettie Old Regular Baptist Church located in Pike County, Ohio, assert the trial court erred by: (1) finding there to be two congregations, equally entitled to church property; and (2) ordering a permanent injunction in favor of each party against the other. Having reviewed the applicable Ohio law and the record herein, we find competent, credible evidence supports the trial court's decision that there are two congregations. We further find the trial court did not abuse its discretion in

ordering a permanent injunction be imposed. Accordingly, we overrule

Appellants' assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} This lawsuit arises from a dispute between two factions competing to

control real and personal property belonging to the Little Ettie Old Regular Baptist

Church, ("The Church"), of Beaver, Ohio. The Church was founded in 1946 as an

unincorporated voluntary association.[1] The Church began as one of 52 churches in

the New Salem Association. New Salem Association is one of seven Old Regular

Baptist Church Associations.[2]

{¶3} The Church acquired its real property in 1965 and later acquired a

cemetery. The real estate, personal property, and church funds are held in trust.

The Church building was constructed in 1972. The membership began worship

services in the church building in 1973. Male members are referenced as

"brothers" and female members are referenced as "sisters."

{¶4} Both parties agree The Church "holds its own key," which means the

members maintain complete autonomy over decisions of The Church. The Church

does not have a constitution, by-laws, or a written governing document. It is a

self-governing congregational organization. The Church is governed by its

---

[1] Since the inception of the lawsuit, Appellees have filed the appropriate documents with the Ohio Secretary of State to incorporate the Church.

[2] The Old Regular Baptists are a Christian denomination primarily based in the Appalachian region of the United States. New Salem serves as an advisory board to the Church. Members of the Little Ettie Church can attend worship services at other churches which are members of the New Salem Association.

members through its history and minutes. A clerk keeps the minutes of every

business meeting.

{¶5} The membership has four officers: moderator, assistant moderator,

clerk and assistant clerk. Moderators are ordained ministers and are the only

members who can preach. The membership convenes in the church building for a

business meeting on the second Saturday of each month.[3] The membership

conducts worship services in the church building on the second Sunday of each

month. At the business meetings, if a member makes a motion and another

member does not object, then the motion passes without the necessity of members

voting. However, if a member objects to the motion then the members vote and

the majority prevails. Moderators do not vote unless the vote is needed to break a

tie.[4] Church officers are elected each December.

{¶6} Trustees are either elected by the membership or appointed by the

moderator to hold title to the real estate and to maintain the real estate. The

trustees also control The Church's personal property and funds. However, the

trustees' control is only with the consent of the membership.

{¶7} On February 6, 2012, church trustees Brother Alger Mullins, Brother

Paul Mathews, and Brother Allan Osborne (Appellees), filed suit against

---

[3] At the business meeting, the established practice is to begin with song followed by prayer. Next, the moderator "seats" the church, and then proceeds to regular business.

[4] The Church did not require a set number of members to be present at a meeting in order to have a quorum to conduct business.

Appellants, other members of the Church.[5]  Appellees made the following general

allegations:

> 1.  That the defendants held a meeting on January 25, 2012 and
> attempted to expel members from The Church;
>
> 2.  That the trustees and other members were not provided notice;
>
> 3.  That the Appellants had removed personal property belonging to
> The Church from the premises;
>
> 4.  That Appellants were inquiring of the procedures to transfer church
> real estate; and,
>
> 5.  That Appellants had attempted to empty The Church's treasury.

Appellees requested a temporary restraining order be issued to prevent Appellants

from entering upon church property or disposing of it.  On February 22, 2012, the

trial court denied the ex parte request for a temporary restraining order.[6]  On

February 23, 2012, Appellants filed an answer to the complaint along with a

counterclaim.

{¶8}  Appellants brought their counterclaim, pursuant to R.C. 2721.02, and

requested a declaration of the legal rights, duties, obligations, and relationships of

the parties.  In the counterclaim, Appellants stated that they were the "true and

lawful members" of The Church, that Appellees had previously been expelled from

---

[5] The named defendants are Jim Wicker, Julius Wicker, James Mullins, Jody Tuttle, Ernest Hamilton, Herman McCown, Purvis Sturgill, Monnie Tackett, Pearl Powers, Betty Wicker, Johnda Wicker, Alleane White Meyers, Carolyn Wallin, Anna Louise Hamilton, Judith Reese, and Teddy Honaker.

[6] The entry denying the request was signed by a judge sitting by assignment.  The judge of the Pike County Court of Common Pleas recused himself shortly after the complaint was filed.

The Church, and that Appellees were now trespassers on the property. Appellants alleged that Appellees were not adhering to long-standing beliefs of The Church, attempting to "pervert" church doctrine, and to take control of The Church. Appellants also requested a temporary and permanent injunction, as well as a judgment against Appellees for the wrongful taking of church funds. Appellees filed a reply to the counterclaim and the parties engaged in written discovery.

{¶9} On May 11, 2012, Appellants filed a motion requesting the court for an order allowing them to worship in the church building one weekend a month during the pendency of the action. The trial court set the matter for hearing which took place on June 25, 2012. On July 13, 2012, the court journalized its entry and order, effective during the pendency of the action, as follows:

> 1. Appellees had the sole right to access, occupancy and use of church buildings on the even-numbered weekends during the even numbered months.
>
> 2. Appellants had the sole right to access, occupancy and use of church buildings on the odd-numbered weekends during the even-numbered months.
>
> 3. Appellants had the sole right to access, occupancy, and use of church buildings on the even-numbered weekends during the odd-numbered months.
>
> 4. Appellees had the sole right to access, occupancy, and use of church buildings on the odd-numbered weekends on the odd-numbered months.

The parties were further ordered to secure the buildings, furnish keys and access, share tools and equipment for maintenance of The Church, share maintenance responsibilities, and share incidental expenses for the operation of church property.

{¶10} After depositions were obtained, Appellants filed a motion for summary judgment. Appellants argued that the court need not decide underlying issues between the parties; it simply needed to determine which faction in the church acted under the proper authority in conducting The Church's affairs. The testimony adduced in deposition and at trial demonstrated that in the months leading to the filing of the lawsuit, the factions disagreed as to: (1) the extent of women's voting rights on church matters; and (2) as to The Church's continued participation in the New Salem Association. Appellants concluded that reasonable minds could only conclude that Appellees represented a minority faction of The Church, were not valid representatives of The Church, and did not have the right to control The Church and its property.

{¶11} Appellees filed a memorandum in opposition to the motion for summary judgment.[7] Appellees argued there were genuine issues of material fact as to the historical tradition of The Church and its governance. One of the key disputed facts, Appellees cited, was the appropriateness of a secret, unnoticed, non-traditional, and exclusionary meeting conducted by Appellants.

---

[7] For cause, the court allowed the memorandum in response to be filed instanter.

{¶12} On May 27, 2014, the trial court granted the motion for summary judgment in part and denied it in part.[8] On September 11, 2014, the case was referred to mediation. On January 12, 2015, Appellees filed a motion for an order of contempt, asserting that Appellants had failed with the trial court's temporary order that the parties share incidental expenses in connection with the operation of The Church.[9] On February 23, 2015, Appellants filed a motion for contempt, alleging that the Appellees failed to pay one-half (1/2) of the cost of insurance and asked the court to order Appellees to reimburse Appellants for one-half (1/2) of the monies taken from The Church checking account.

{¶13} On June 8, 2015, Appellants also filed a motion to supplement the counterclaim. On June 16, 2015, the trial court granted the motion. On that same date, Appellants filed their counterclaim, alleging that Appellees wrongfully took church funds.

{¶14} On September 8, 2015, Appellants filed a motion to join The Church as a party defendant and counterclaimant. Although Appellees filed a memorandum contra, the trial court subsequently granted the motion to join. On March 16, 2016, the trial court journalized an order setting forth its findings on the motions for contempt. The court ordered that the motions for contempt filed by

---

[8] The motion was granted as to the rightful expulsion of Brother Mullins, but denied on all other issues.
[9] Also in January 2015, Appellees dismissed Teddy Honaker as a party defendant.

both parties be dismissed.[10]  On March 16, 2016, the trial court also journalized a

partial judgment entry which ordered as follows:

> 1.  That within 30 days, either party could file a partition action, regarding The Church, excluding the cemetery;
>
> 2.  That within 30 days, either party could file a motion to publicly sell the personal property of The Church;
>
> 3.  That Plaintiff Paul Mathews must file an accounting regarding money which he withdrew from The Church's account, with the court and with Appellant Ernest Mathews, within 20 days;
>
> 4.  That the July 12, 2012 journal entry and order be converted to a permanent injunction and incorporated herein as if fully rewritten[11]; and,
>
> 5.  That the case was to remain pending until further order of the Court.[12]

{¶15}  On April 15, 2016, counsel for Appellees filed a report of accounting

regarding the proceeds of the closed Church checking account.  On June 9, 2016,

the trial court journalized an entry scheduling non-oral hearings on the two March

16, 2016 entries (contempt motions and partial judgment entry).  Thereafter on

July 5, 2016, the trial court journalized its judgment entry in which it found there

were two congregations equally entitled to possession and control of church

---

[10] The trial court also made other orders as to reimbursement of Appellees for bills presented at the contempt motions hearing.

[11] The trial court included an additional order that the parties must agree prior to incurring major expenses, and if the parties could not agree, they must mediate any issues.

[12] On April 13, 2016, Appellants filed a notice of appeal of the partial judgment entry.  The case was assigned appellate case number 2016-CA-866.  On April 22, 2016, Appellees filed notice of cross-appeal.  On May 24, 2016, this Court issued an opinion noting that the trial court specifically ordered the case to remain pending until further order.  We found no jurisdiction to consider the appeal because the partial judgment entry was not a final order under R.C. 2505.02(B)(1), and the partial judgment entry did not contain an express determination that there was no just reason for delay under Civ.R. 54(B).

property.[13]  The court also converted the prior temporary injunction into a

permanent injunction granted in favor of each party as against the other party.  This

timely appeal followed.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED IN GRANTING A PERMANENT
INJUNCTION IN FAVOR OF PLAINTIFFS-APPELLEES AS
AGAINST DEFENDANTS-APPELLANTS.

II. THE TRIAL COURT'S FINAL JUDGMENT ON
DEFENDANTS-APPELLANTS' CLAIM FOR DECLARATORY
JUDGMENT IS CONTRARY TO LAW AND AGAINST THE
WEIGHT OF THE EVIDENCE."

{¶16}  For ease of analysis, we begin with Appellants' second assignment of

error.  The trial court's July 5, 2016 judgment entry recited at paragraph 5:

"Defendants also seek a judgment that they be declared the true and lawful

members of the church."  On that date, the court ordered:

"* * *[D]efendants' claim for sole ownership of the Little Ettie Old
Regular Baptist Church real and personal property * * * is denied.
[T]he parties equally own and occupy the church real and personal
property."

---

[13] The trial court's July 5, 2016 judgment entry begins with a statement that it incorporates the March 16, 2016 entry on motions for contempt, partial judgment entry, and June 9 journal entry scheduling a non-oral hearing, as if fully rewritten.  Preparation and reading of this opinion have required frequent reference to the court's prior and incorporated entries, which were not final and appealable.  However, because we find that the July 5, 2016 entry is "worded in such a manner that the parties can readily determine what is necessary to comply" with the court's order, we also find no issue as to finality of the July 5, 2016 entry. *See Burns v. Morgan,* 2006-Ohio-1213, 847 N.E.2d 1288, (4th Dist.), ¶10, (In the context of a magistrate decision issued in domestic court: "After the magistrate issues a recommendation, '[t]he trial court must * * * enter its own independent judgment disposing of the matters at issue between the parties, such that the parties need not resort to any other document to ascertain the extent to which their rights and obligations have been determined.' ")

Appellants argue the trial court erred because it failed to apply the correct law in deciding the matter. Appellants assert that the trial court attempted to fashion a remedy which would be inoffensive to both parties, and in doing so, erred in finding that there are two congregations which equally own, occupy, and have an interest in church property. While both parties point to The Church's tradition of self-governance by majority rule, Appellants' emphasize that these claims arose when the Appellees had physically locked them out of the sanctuary, and the lower court should have held that the "majority decisions of the membership" must prevail. In their response, Appellees contend that Appellants failed to produce sufficient evidence showing that they're the sole, lawful members of The Church, and the trial court's judgment is not against the manifest weight of the evidence. Appellees have asked this Court to affirm the lower court's judgment.

## A.  STANDARD OF REVIEW

{¶17}  When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Landmark Properties, L.L.C. v. Trent,* 4th Dist. Highland No. 16CA862, 2016-Ohio-8574, ¶ 16; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179,

972 N.E.2d 517, ¶ 20 (clarifying that the same manifest-weight standard applies in civil and criminal cases). "Because the trial court is best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the witnesses, a reviewing court will presume that the trial court's findings of fact are accurate." *Cadwallader v. Scovanner,* 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 9 (12th Dist.), citing *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). "We will reverse a judgment as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the judgment." *Pinkerton* at ¶ 18. The *Trent* decision further observed at ¶ 17:

> "[A]s this Court previously explained in *State v. Murphy*, 4th Dist.
> Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31:
>
> 'It is the trier of fact's role to determine what evidence is the most
> credible and convincing. The fact finder is charged with the duty of
> choosing between two competing versions of events, both of which
> are plausible and have some factual support. Our role is simply to
> ensure the decision is based upon reason and fact. We do not second
> guess a decision that has some basis in these two factors, even if we
> might see matters differently.' "

### B. LEGAL ANALYSIS

{¶18}  We begin by recognizing the court's limited jurisdiction to intervene and decide church disputes. It is well established that civil courts lack jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of a church or

religious organization. *Ohio Dist. Council Inc. of the Assemblies of God v. Speelman,* 2016-Ohio-751, 47 N.E.3d 954 (12th Dist.), ¶ 19; *Tibbs v. Kendrick,* 93 Ohio App.3d 35, 40, 637 N.E.2d 397 (8th Dist.1994). This is known as the ecclesiastical abstention doctrine. *Harrison v. Bishop,* 6th Dist. Lucas No. L-14-1137, 2015-Ohio-5308, 44 N.E.3d 350, ¶ 19. The doctrine is a recognition that "[a]ll who unite themselves to such a body [i.e., the church] do so with an implied consent to [its] government, and are bound to submit to it. * * * It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for." *Plough v. Lavelle*, 170 Ohio App.3d 720, 2006-Ohio-6200, 868 N.E.2d 1055, ¶ 16 (11th Dist.).

{¶19} "Ohio appellate courts have fashioned the ecclesiastical abstention doctrine into a two-part test to determine whether a court has subject matter jurisdiction over a church dispute." *Speelman, supra,* at ¶ 21, quoting *Harrison* at ¶ 41, citing *Bhatti v. Singh,* 148 Ohio App.3d 386, 2002-Ohio-3348, 773 N.E.2d 605, ¶ 25 (12th Dist.). First, the court must determine whether the church is a hierarchical or congregational church. *Tibbs,* 93 Ohio App.3d at 43, 637 N.E.2d 397; *State ex rel. Morrow v. Hill,* 51 Ohio St.2d 74, 364 N.E.2d 1156 (1977), syllabus ("[t]he issue of whether the local church is a part of a hierarchical church

organization is a proper matter for determination by the appropriate court"). A hierarchical church is one in which a local church is a subordinate member of a general church "in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." *Speelman, supra,* at ¶ 22, quoting *Morrow* at 76, 364 N.E.2d 1156.

{¶20} A congregational polity, on the other hand, exists when "a religious * * * congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority." *Morrow, supra*, at ¶ 22, quoting *Watson v. Jones*, 13 Wall 679, 722, 723 (1871). " 'In the congregational form, each local congregation is self-governing.' " (Citation omitted.) *Smith v. White,* 2014-Ohio-130, 7 N.E.3d 552, ¶ 29, quoting *Southern Ohio State Exec. Offices of Church of God v. Fairborn Church of God,* 61 Ohio App.3d 526, 535, 573 N.E.2d 172 (2nd Dist.1989). In *White*, the appellate court noted a congregational church "is governed by whatever constitution, rules, and processes it has put in place for itself. However, a congregational church is not granted the 'unbridled right to disregard and to violate the provisions of [its] own written by-laws or constitutions.' " *Id.* at ¶ 76, quoting *Calvary Congregational Church, Inc. v. Eppinger,* 8th Dist. Cuyahoga No. 75011, 2000 WL 193216, *1 (Feb. 17, 2000),

quoting *Randolph v. First Baptist Church of Lockland,* 68 Ohio Law Abs. 100, 105, 120 N.E.2d 485 (C.P.1954). It is undisputed in the case sub judice that The Church is a congregational polity.

{¶21} In *White,* the appellants, a group of church members, appealed the dismissal of their complaint against the pastor and other church members for a lack of subject matter jurisdiction. The appellate court disagreed, pointing out that whether the pastor engaged in wrongdoing, rendering himself unqualified and therefore subject to removal for misconduct, was an ecclesiastical inquiry. Based upon the ecclesiastical abstention doctrine, the appellate court concluded the trial court did not err. By way of commentary, the appellate court also emphasized that Smith, one of the plaintiffs, never followed the procedures listed in the governing church documents for resolving the matters at hand, and following the internal procedures should have been done before any potential court actions were initiated.

{¶22} In our own appellate district, we have not been called upon to consider the precise question of the designation of true lawful church members entitled to church real and personal property. In *Salzgaber v. First Christian Church,* 65 Ohio App.3d 368, 583 N.E.2d 1361, (4th Dist.1989), we cited *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, (1979), wherein the United States Supreme Court held that a state is constitutionally entitled to resolve disputes over the ownership of church property by adopting a "neutral principles of law" approach

which relies on examination of the language of deeds, the terms of local church

charters, state statutes governing the holding of church property, and the provisions

in the constitution of the general church concerning the ownership and control of

church property.[14]  Courts also retain jurisdiction in cases involving congregational

churches to determine whether the proper authority made the decision about church

discipline or policy. *Howard v. Covenant,* 124 Ohio App.3d 24, 705 N.E.2d 385

(1st Dist.2003), ¶ 28. *See Tibbs v. Kendrick*, 93 Ohio App.3d 35, 637 N.E.2d 397

(1994); *First Baptist Church of Glen Este v. United States of Ohio,* 591 F.Supp. at

683 (S.D. 1983).[15]

{¶23} *Salzgaber* involved a suit by former copastors of church, asserting

causes of action arising out of their termination.  The trial court granted defendants'

motions to dismiss for lack of subject matter jurisdiction, and a timely appeal

followed.  This Court held:

> "(1) First Amendment prohibition of establishment of or interference
> with free exercise of any religion precluded consideration of causes of
> action alleging breach of written and oral contract and promissory
> estoppel, with exception of question whether plaintiffs were given
> requisite 90-day notice by church prior to their termination; (2) First
> Amendment precluded consideration of cause of action alleging that
> church officers tortuously interfered with employment contract; and
> (3) constitutional prohibition also precluded consideration of cause of

---

[14] This Court in *Salzgaber*, however, also recognized the decision in *Hutchison v. Thomas*, 789 F.2d 392, certiorari denied (1986), 479 U.S. 885, 107 S.Ct. 277, (C.A.6, 1986), wherein the United States Court of Appeals, Sixth Circuit, discussed the "neutral principles of law" approach and stated: "The 'neutral principles' doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be."
[15] *See also Ohio Southeast v. Kruger,* 17 Ohio Misc. 8, 243 N.E.2d 781 (C.P.1968).  The courts will inquire only as to what are the rules and decisions of the church and its tribunals, and what parties or factions adhere to them, without questioning their wisdom or propriety. *Id.*

action alleging that church officers and church organization published defamatory remarks concerning plaintiffs' conduct in the ministry and financial misdealings."

{¶24} In *Anderson v. Burns,* 4th Dist. Lawrence No. 98CA2, 1998 WL 799128 (Nov. 12, 1998), the appellees filed a complaint in 1996, asserting that pastors Brenda Burns and Harold Burns of The Sovereign Grace Glorious Church of God in Christ were both removed pursuant to a members' vote taken on June 5, 1995. The complaint then asserted that on June 12, 1995, Brenda Burns and Harold Burns "called family members together without providing notice to plaintiffs and attempted to terminate plaintiffs' membership" in the church. Appellants asserted that Brenda Burns and Harold Burns had previously been removed from their positions.

{¶25} Eventually a magistrate heard the case and the magistrate's decision found: (1) that the minutes of the meetings were usually constructed sometime after the meeting, rather than being entered during the course of the meetings; (2) that a May 17, 1997 meeting held without the pastor's presence did not comply with the pertinent rules; and (3) the pastor's attempted removal did not comply with the church's member organization's by-laws. The magistrate recommended that Brenda Burns be found to be the "minister of the church" and that Burns "properly dismissed from fellowship the three (3) plaintiffs." Appellants filed timely objections to the decision.

{¶26} The trial court subsequently issued a decision finding that a May 10, 1995 "meeting" did not qualify as either a regular business meeting or a specially called business meeting. The trial court thus concluded that the action taken on May 10, 1995 to dismiss the pastor and the assistant pastor and to withdraw from the conference was ineffective. The trial court further held that the May 17, 1997 "meeting" held without the pastor was not a valid business meeting. Consequently, the trial court dismissed the appellants' complaint.

{¶27} On appeal, the appellants asserted that the trial court's judgment was against the manifest weight of the evidence. The appellees argued: (1) that their actions were in full accordance with the by-laws; and (2) that competent and credible evidence supported the trial court's judgment. In our decision, we found that the record contained sufficient, competent evidence to support the trial court's conclusion. While we recognized that conflicting evidence was adduced during the trial court proceeding, we reiterated that as an appellate court, we should not substitute our judgment for that of the trial court. Our review of the record revealed competent, credible evidence to support the trial court's conclusion that the "meetings" in question did not qualify as either regular business meetings or special business meetings, and thus, the action taken at those "meetings" was rendered ineffective. We overruled the assignment of error and affirmed the trial court's judgment. However, citing *Salzgaber, supra,* Judge Harsha concurred in

judgment only because of his conclusion that the controversy was essentially ecclesiastical in nature and not subject to resolution in the court.

{¶28}  A view more congruent with Judge Harsha's opinion in *Burns* was demonstrated in the court's decision in *Slavic Full Gospel Church, Inc., v. Vernyuk,* 8th Dist. Cuyahoga No. 97158, 2012-Ohio-3943.  In *Vernyuk,* a dispute arose among the members, with the defendants and approximately half of the congregation "defecting" and the remaining half siding with the associate pastor. *Id.* at ¶ 2.  The defendants attempted, via a member vote, to remove the pastor from his position.  However, they did not have a quorum, and the dispute escalated.

{¶29}  Eventually, the Church filed a complaint against the defendants, alleging "interference with operation of church" and requesting an accounting from one of the defendants who was serving as the Church treasurer.  Four days prior to the scheduled trial date, the parties agreed to binding arbitration.  Subsequently, the parties entered a revised binding arbitration agreement.  Arbitration was conducted before a five-member panel, which issued a "decision and recommendations." However, throughout the summer of 2011, both parties filed various motions to stay, modify, and/or confirm this arbitration award.  On July 15, 2011, the court granted the defendants' summary judgment motion, concluding that it had no subject matter jurisdiction to hear ecclesiastical matters.

**{¶30}** On appeal, one of the assignments of error asserted that the trial court erred in granting the motion for summary judgment. The appellate court pointed to the established case law emphasizing that if a church is congregational, a civil court has jurisdiction only to determine the narrow issue of whether the decision concerning the ecclesiastical dispute was made by the proper church authority. *Id.* at 17. Since the church in *Vernyuk* was congregational, the court considered whether the nature of the dispute was ecclesiastical or secular, and reviewed the appellants' complaint to determine whether the controversies presented in each count required determination of ecclesiastical or secular issues. The appellate court observed at ¶ 19:

> "Count 1 of the Church's amended complaint is captioned "Complain[t] to Enjoin Interference with Operation of Church." In this cause of action, the Church alleges that on June 26, 2007, a new membership policy was enacted. Defendants did not follow this membership policy and have "caused disorder and disruption in the Church." The dispute escalated over the next two years, and by November 2009, defendants had conducted their own Church meetings and elections and claimed the right to enter into contracts and control bank accounts on behalf of the Church, allegedly in violation of the Church charter."

And at paragraph 20:

> "Count 2 of the complaint is captioned "Complaint for Ejectment and for Damages." In this cause of action, the Church states that "Defendants have demonstrated that they are attempting to execute a hostile takeover of the [C]hurch leadership and administration, [and] attempt[ing] to establish policy and assert control over the Church property, * * * in violation of law and the charter of the Church."

{¶31} The appellate court interpreted the first two counts of the Church's amended complaint as alleging that defendants "defected" from the Church and essentially asking the court to determine who was a proper member, as we are asked to do in the case sub judice. In granting summary judgment to defendants, the trial court stated:

> "The basis of this entire lawsuit surround[s] alleged 'unchristian like behaviors' of all of the parties and the impact of this behavior on Church policy and administration. This court finds that it is without jurisdiction to establish Church policy or eject defendants from the Church membership as both would require this court to inquire into ecclesiastical matters."

{¶32} After discussing the religious freedom embedded in the First Amendment to our Constitution, the appellate court agreed that the Church's first two causes of action were clearly ecclesiastical in nature, and as a matter of law, the court lacked jurisdiction to hear these claims. *Id.* at 23. The appellate court in *Vernyuk* focused upon analysis of the allegations of the complaint, rather than review of the Church's governance and procedures, as did the trial court in *Anderson, supra.* It appears the trial court in the case sub judice also undertook painstaking scrutiny of the Little Ettie Church's governing practices, procedures, and customs.

{¶33} More recently in *Ohio Dist. Coun., Inc. of the Assemblies of God v. Speelman,* 2016-Ohio-751, 47 N.E.3d 954, the 12th district recited the above-recognized principles in determining jurisdiction for consideration of church

disputes. By contrast, the *Speelman* case involved a hierarchical polity in litigation with it statewide organization. However, in its decision, the appellate court, quoting *Winston v. Second Baptist Missionary Church of Lorain,* 9th Dist. Lorain No. 96CA006588, 1997 WL 576374, *2, stated: "[A] civil court does not offend the First Amendment by inquiring into whether a meeting * * * was properly called and properly conducted* * *." *Speelman* went on to find:

> "The trial court was not called upon to determine whether Speelman should be pastor or to determine matters of religious concern. Rather, the trial court was called upon to determine which body was authorized to make those determinations and to defer to the determination of the authorized body."

{¶34} In this matter, we are asked to find that the trial court's determination that there are two congregations, equally entitled to ownership of the real and personal property, was not supported by the weight of the evidence. As the trial court found in the March 16, 2016 partial judgment entry, The Church has been governed by its members through its history and minutes. The trial court made the following findings in the March 16, 2016 partial judgment entry:

> "Until December 2000, only men members could vote on all issues brought before the membership. Beginning that month, sisters could vote on non-scriptural issues and the election of officers. * * *
>
> On October 8, 2011, the brothers voted 6-4 to grant the sisters the right to vote on all matters that come before the members. (Plain. Ex.4)

On November 12, 2011, the members rescinded the sisters' right to vote by not approving the minutes of the October meeting by a 6-5 vote. (Plain. Ex.4) * * *

On December 10, 2011, the moderator would not allow the sisters to vote on the election of officers because the November vote did away with the voting of all sisters. No member moved to reinstate the sisters' right to vote. (Plain. Ex.4) * * *

On January 14, 2012, the brothers approved the motion to withdraw from the New Salem Association by a vote of 7-5. No one moved to allow the sisters to vote on the issue. The moderator would not allow the sisters to vote. No member objected to not allowing the sisters to vote.

On January 25, 2012, defendants met in the private home of one of the members. Plaintiffs did not receive notice of this meeting. (Def. Ex.II) * * *

The Court finds that defendants' January 25, 2012 meeting was improper. No witness testified about past meetings, regular or special, which had not been held in the church. Defendants did not invite all the members to the meeting, but only those members who would support their purpose to remove plaintiffs from membership. Instead of moving to give sisters the right to vote and/or move not to withdraw from New Salem on December 10 or January 14 or wait to do so at the February 11 meeting, defendants held the special meeting. * * *

Defendants attempted to correct their improper actions approximately 40 months later during this lawsuit by giving notice of a May 9, 2015 special meeting to everyone who was a member on January 25, 2012. * * * In addition, defendants did not present evidence that the membership had voted previously on any important issue other than in person. * * *

For the above reasons, the Court finds that defendants' May 9, 2015 vote was improper and had no force and effect."

**{¶35}** The trial court found Appellants' January 25, 2012 and May 9, 2015

meetings were improper and had no force and effect. We have fully reviewed the

record, the trial transcripts, and the exhibits relied upon by the trial court. We find

the trial court's above findings are supported by competent credible evidence. The

trial court was in the best position to view the witnesses and to resolve conflicting

testimony. As an appellate court, we defer to its findings.

{¶36} The trial court went on to hold in the July 5, 2016 judgment entry:

"Defendants also seek a judgment that they be declared the true and
lawful members of the church. However, on March 16, the Court
found that neither party is the sole owner of the real and personal
property of the church located at 2707 Salem Cave Road, Beaver,
Ohio 45613, to the exclusion of the other party. The Court found that
there are two congregations which equally own and occupy the
personal property."

{¶37} We also find that the trial court's judgment in this regard is supported

by competent credible evidence. In the March 16, 2016 partial judgment entry, the

trial court noted that on January 25, 2012, Appellants met in a private home. The

entry also emphasizes that on or about January 28, 2012, Appellants were unable to

enter The Church building because of locked chains plaintiffs installed. It appears

that neither faction observed the church's historical custom and procedure of

bringing issues to another individual first, and to the full congregation as a last

resort to resolve the issues. Various witnesses testified in deposition and at trial to

this procedure in dealing with church grievances or concerns.

{¶38} While the *Vernyuk* court commented on the "un-Christian-like" activities" of both factions and washed its hands of further intervention based upon ecclesiastical abstention, we do not have that luxury. The trial court in *Vernyuk* granted summary judgment overruling the claims. Here, we are confronted with the trial court's decision which found there are two separate congregations. In the trial court's March 16, 2016 partial judgment entry, the trial court discussed the improper meetings held by defendants and concluded:

> "The Court finds it significant that 14 members voted and 12 former members did not vote. Each party wants the Court to decide that it is entitled to all of Little Ettie's real and personal property on this very close numerical difference. For the above reasons, the Court finds that defendant's May 9, 2015 meeting was improper and had no force and effect. However, the Court's finding does not mean that plaintiffs prevail. The Court shall convert the temporary injunction into a permanent injunction with modifications. Neither plaintiffs nor defendants have proven that they are entitled to be awarded all or any part of Little Ettie's real and personal property to the exclusion of the other party."

{¶39} While the trial court focused on the improper meetings, we also observe the record is devoid of evidence that either party approached the other, as was church custom, to try to work out their problems, prior to holding separate, unnoticed meetings or placing chains on the doors. In that regard, it is difficult to distinguish which group unswervingly followed prior church procedure after January 25, 2012. And, while we might well have resolved the issues as the *Vernyuk* court did at the motion practice stage of the proceedings and we further

question the feasibility and/or ease of implementing the trial court's decision, we defer to the finder of fact who was in the best position to view observe the witnesses and resolve conflicts in the evidence.

{¶40} In this matter, we decline to disturb the trial court's decision. Accordingly, we overrule the second assignment of error and affirm the judgment of the trial court. We turn now to the first assignment of error.

## A. STANDARD OF REVIEW

{¶41} The decision to grant the equitable remedy of injunction rests in the sound discretion of the trial court. *Hawkins v. Creech,* 4th Dist. Adams No. 12CA938, 2013-Ohio-1318, ¶ 6. *See Garano v. Ohio,* 37 Ohio St.3d 171, 524 N.E.2d 496 (1988); *Myers v. Wild Wilderness Raceway, L.L.C.,* 181 Ohio App.3d 221, 2009-Ohio-9741, 908 N.E.2d 950, Fn. 5 (4th Dist.). Trial courts retain broad discretion to fashion the terms of an injunction. *D & J Co. v. Stuart,* 146 Ohio App.3d 67, 80, 765 N.E.2d 368 (6th Dist.2001); *Restivo v. Fifth Third Bank of Northwestern Ohio, N.A.,* 113 Ohio App.3d 516, 520, 681 N.E.2d 484 (6th Dist.1996); *Cullen v. Milligan,* 79 Ohio App.3d 138, 141, 606 N.E.2d 1061 (10th Dist.1992); *Myers,* ¶ 25. Generally, an abuse of discretion is much more than an error of law or judgment; rather, it implies that a trial court's attitude is unreasonable, arbitrary, or unconscionable. *Hawkins, supra,* at ¶ 7. *See Landis v. Grange Mut. Ins. Co.,* 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998); *Malone v.*

*Courtyard by Marriott L.P.,* 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1996);

*Myers,* ¶ 26. When applying the abuse of discretion standard, appellate courts

must not substitute their judgment for that of the trial court. *State ex rel. Duncan v.*

*Chippewa Twp. Trustees,* 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); *In re*

*Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991); *Myers,* ¶ 26.

Indeed to establish an abuse of discretion, the result must be so palpably and

grossly violative of fact or logic that it evidences not the exercise of will but the

perversity of will, not the exercise of judgment, but the defiance of judgment, not

the exercise of reason but instead passion or bias. *See Nakoff v. Fairview Gen.*

*Hosp.,* 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996); *Adams v. Adams,* 4th Dist.

Washington No. 05CA63, 2006-Ohio-2897, at ¶ 6; *Myers,* ¶ 26.

## B. LEGAL ANALYSIS

**{¶42}** Appellants argue the trial court erred in granting a permanent

injunction in favor of Appellees and against Appellants. Appellees respond that

they produced sufficient evidence to show they were entitled to an injunction.

Appellees point to the testimony that Appellants conspired to eliminate their

membership, attempted to remove financial assets, and were attempting to transfer

the deeds to The Church's real property. Appellees also point out that the purpose

of injunctive relief is to avoid future harm. In its July 5, 2016 judgment entry, the

trial court ordered:

"That both parties are permanently enjoined from disposing of church real estate and personal property without the prior written approval of the other party which consent cannot be unreasonably withheld. * * *

That plaintiffs shall have the sole right to access, occupancy and use of the church buildings and real estate * * * on the even-numbered weekends during the even-numbered months. Defendants shall have the sole right to access, occupancy and use of the church buildings and real estate * * * on the odd-numbered weekends during the even-numbered months. Said access, occupancy, and use shall be for such worship services, including funerals, or church business as they shall deem proper.

That defendants shall have the sole access, occupancy and use of the church buildings and real estate * * * on the even-numbered weekends during the odd-numbered months. Plaintiffs shall have the sole right to access, occupancy and use of the church buildings and real estate * * * on the odd-numbered weekends during the odd-numbered months. Said access, occupancy and use shall be for such worship services, including funerals, or church business as they deem proper."

The court's July 5, 2016 judgment entry further provides orders for securing the buildings, furnishing keys, participating in maintenance of the buildings and real estate, sharing in incidental expenses, and incurring major expenses.

{¶43} The trial court heard two days of testimony. Julius Wicker and Ernest Hamilton testified on behalf of Appellants. Alger Mullins, Paul Mathews, and Allan Osborne testified on behalf of the Appellees.[16] The evidence in this matter demonstrated that the relationship between persons and factions in the church was beginning to disintegrate as early as June 2011 and the controversy

---

[16] The court also heard testimony from Kenneth Sturgell and George Mathews.

heated up in the fall of 2011 and early 2012. By the end of January 2012, an unnoticed, unofficial meeting was held in a private home by one faction and the other faction caused locks to be placed on the Church doors. While the record on appeal is cold, the passion of the respective parties was evident to the appellate court as it was, no doubt, to the trial court judge.

{¶44} These credibility issues are for the trier of fact to resolve. *Hawkins, supra,* at ¶ 20 , citing *Cole v. Complete Auto Transit, Inc.,* 119 Ohio App.3d 771, 777-778, 696 N.E.2d 289 (1st Dist.1997); *Jacobs v. Jacobs*, 4th Dist. No. 02CA2846, 2003-Ohio-3466, at ¶ 31; *Myers,* ¶ 16. The rationale for deferring to the trier of fact on issues of witness credibility and evidence weight is that the trier of fact is best situated to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weigh credibility. *Myers v. Garson,* 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Myers,* ¶ 16. The trier of fact may choose to believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill,* 124 Ohio App.3d 468, 470, 706 N.E.2d 438 (4th Dist.1998); *Stewart v. B.F. Goodrich Co.,* 89 Ohio App.3d 35, 42, 623 N.E.2d 591 (4th Dist.1993). *Myers v. Wild Wilderness Raceway, L.L.C.,* 181 Ohio App.3d 221, 908 N.E.2d 950, at ¶ 16.

{¶45}   Based on the evidence and testimony presented herein, we do not find the trial court abused its discretion by ordering a permanent injunction with specific orders for sharing The Church property and sharing expenses.  The trial court exercises broad discretion in fashioning the terms of an injunction and, indeed, this trial court was tasked with sorting through multiple exhibits and confusing testimony in order to determine the necessary and precise terms of this injunction.  We find nothing whatsoever to connote an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.  For the foregoing reasons, we find no abuse of discretion.  Accordingly, we overrule the first assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, J., dissenting:

**{¶46}**  I respectfully dissent from the decision and judgment entry overruling appellants' assignments of error and affirming the judgment of the trial court.  The opinion notes a prior case of this court, *Anderson v. Burns*, 4th Dist. Lawrence No. 98 CA 2, 1998 WL 799128 (Nov. 12, 1998), where, in a per curiam decision, we affirmed the dismissal of a complaint because a meeting to dismiss a pastor and assistant pastor was ineffective.  I concurred in judgment only because "the controversy is essentially ecclesiastical in nature and thus, is not subject to resolution in the courts." *Id.* at *2 (Harsha, J., concurring).

**{¶47}**  Here, the dispute is essentially ecclesiastical in nature.  In their counterclaim, the appellants specifically allege that the appellees "have attempted to *pervert established church doctrine*."  (Emphasis added.)  Their claim expressly requested the application of "church doctrine," i.e., ecclesiastical considerations.  And in their counterclaim, more appellants are seeking the ouster of the church's trustees.  Actions seeking the termination and replacement of the leadership of the church are inherently ecclesiastical.  *Harrison* at ¶ 53.  "[T]he United States Supreme Court has cautioned religious organizations who wish to provide for civil court assistance in the resolution of church disputes to 'structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions.' " *Harrison v. Bishop*, 2015-Ohio-5308, 44 N.E.3d 350, at

¶ 47 (6th Dist.), quoting *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. 440, 449, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). The church members here adopted no constitution or by-laws that create a strictly secular resolution of disputes. Consequently, we must presume that they did not intend judicial interference in the resolution of intra-church disputes.

{¶48} It is true that none of the parties objected to the trial court's exercise of jurisdiction over appellees' claim and appellants' counterclaim. In fact, they invited any error in the court's failure to apply the ecclesiastical abstention doctrine. But the ecclesiastical abstention doctrine impacts the trial court's subject-matter jurisdiction, which can neither be conferred on the court by consent of the parties nor waived by application of the invited-error doctrine. *See Doe v. Pontifical College Josephinum*, 10th Dist. Franklin No. 16AP-300, 2017-Ohio-1172, ¶ 18 (affirming the dismissal of claims based on the ecclesiastical abstention doctrine for lack of subject-matter jurisdiction); *State v. Hardie*, 4th Dist. Washington No. 14CA24, 2015-Ohio-1611, ¶ 11, citing *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27 (doctrines of invited error and waiver do not apply to subject-matter jurisdiction); *Turner v. Hooks*, 2016-Ohio-3083, 55 N.E.3d 1133, ¶ 55 (4th Dist.) (adverse parties may not confer jurisdiction upon a court by mutual consent).

{¶49} Because the trial court lacked jurisdiction to decide the dispute between the church members over control of church real and personal property, I dissent from the affirmance of the trial court's judgment.

{¶50} In addition, assuming arguendo that the ecclesiastical abstention doctrine does not bar the parties' claims, I conclude the trial court abused its discretion by determining that there are two competing congregations equally entitled to ownership of the church's real and personal property. The church's historical policy and practice, as reflected in its meeting minutes, has been that the majority rule of the church members prevails on all matters, including in changing church policies and determining church membership. Because it appears that appellants comprise a majority of the church members, they are entitled to enact future changes in church policy upon a properly noticed and effected vote. My reading of the court's order appears to preclude such action.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants any costs herein.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment Only.
Harsha, J.:   Dissents with Dissenting Opinion.

For the Court,

BY:    _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**